**PARTNERS IN CHANGE, L.L.C., a Colorado limited liability company, and John R. Newsome, District Attorney for the Fourth Judicial District, Plaintiffs–Appellants,**

v.

**Eric PHILP, Chair of the Domestic Violence Offender Management Board, and the Domestic Violence Offender Management Board within the Division of Criminal Justice in the Colorado Department of Public Safety, Defendants–Appellees.**

**No. 07CA1536.**

Colorado Court of Appeals,
Div. V.

Oct. 2, 2008.

Holland & Hart, LLP, Kerri Atencio, Colorado Springs, Colorado, for Plaintiff–Appellant Partners in Change, L.L.C.

John R. Newsome, Jr., District Attorney, Douglas J. Miles, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellant John R. Newsome.

John W. Suthers, Attorney General, Diane Marie Dash, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge VOGT.

The issue in this appeal is whether the Standards for Treatment with Court Ordered Domestic Violence Offenders (DV Standards) adopted by defendants, the Domestic Violence Offender Management Board (DV Board) and its chairman, Eric Philp, apply to presentence evaluations of domestic violence offenders. Plaintiffs, Partners in Change, L.L.C., and John R. Newsome, District Attorney for the Fourth Judicial District, appeal the district court's judgment concluding that the DV Standards apply in such cases. We affirm.

## I. Background

The DV Board was established by statute and charged with adopting statewide standards to govern the evaluation, treatment, and monitoring of domestic violence offenders. The DV Board is also responsible for approving the treatment service providers with whom criminal justice agencies may contract. *See* §§ 16–11.8–101, 16–11.8–103(1), (4)(b) & 16–11.8–104(1), C.R.S.2008. Plaintiff Partners in Change, L.L.C., provides domestic violence evaluation and treatment and is listed on the DV Board's approved treatment provider list.

In 2005, Partners and the Fourth Judicial District district attorney established a pilot program for use in misdemeanor domestic violence cases. According to the district attorney's memorandum summarizing the program, its purpose is "to better evaluate the context and dynamics present in each misdemeanor domestic violence case and provide as much information as possible to the county court judge prior to the sentencing hearing." The program contemplates that certain eligible domestic violence offenders will receive plea offers "in terms of caps (i.e., 'cap of two years') on probation or deferred sentences." Additionally, "a term of the plea will be that the Defendant complete a *presentence* treatment evaluation with a specific approved treatment provider who is a licensed mental health professional." (Emphasis in original.)

The memorandum states that the district attorney will recommend a definite term of probation or agree to "a specific term of a deferred sentence" based on the findings and recommendations of the presentence evaluation. Further, in "cases involving very short term treatment recommendations," the sentencing hearing may be continued to provide the defendant an opportunity to complete the recommended treatment; if the defendant

does so, the district attorney "may consider a deferred sentence nunc pro tunc to the date of the plea . . . and ending on the sentencing hearing date."

In November 2005, the DV Board notified Partners that the pilot program appeared to involve court-ordered treatment that did not comply with the DV Standards, and that compliance with the Standards was required in order to be an approved treatment provider. The DV Board subsequently advised Partners that it had found deficiencies in some of Partners' presentence evaluations, including, as relevant here, cases in which Partners had recommended only ten weeks of treatment when DV Standard 5.08 required not less than thirty-six weekly sessions.

Plaintiffs then filed this action, seeking a declaratory judgment that the DV Standards did not apply to cases "in which a deferred sentence has been entered," and that presentence treatment evaluations were not required to comply with the standard requiring a minimum of thirty-six weekly treatment sessions. In an order entered on plaintiffs' C.R.C.P. 56(h) motion for determination of a question of law, the district court resolved the issues adversely to plaintiffs' position. It ruled that "the plain language of the domestic violence offender management statute clearly applies the standards adopted by the [DV Board] to all domestic violence offender cases and at each stage of the case," and that the DV Board had the authority to file a complaint or grievance against a service provider which did not adhere to the DV Standards.

## II. Analysis

Plaintiffs contend that the district court's determination is contrary to the plain language of the statutes addressing management of domestic violence offenders.

In assessing plaintiffs' contentions, we apply well-established principles governing statutory construction. A statute should be construed in a manner that gives effect to the legislative purpose underlying its enactment. To discern that purpose, we look first to the statutory language, giving the words their plain and ordinary meaning and giving due consideration to the statutory scheme as a whole, so as to give consistent, harmonious, and sensible effect to all its parts. If the language is unambiguous, we apply the statute as written; if the language is ambiguous, we look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme. *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 358–59 (Colo.2003); *Kauntz v. HCA–Healthone, LLC,* 174 P.3d 813, 816 (Colo.App.2007); *People v. Lenzini,* 986 P.2d 980, 982 (Colo.App.1999). We review de novo the district court's interpretation of statutory language. *Pueblo Bancorporation*, 63 P.3d at 361.

### A. The DV Standards Apply in Deferred Sentence Cases

Plaintiffs initially argued on appeal that, under the version of section 16–11.8–103(4)(b)(II), C.R.S.2008, in effect at the time of the district court proceedings, deferred sentence cases were excluded from the reach of the DV Standards, and that the DV Board therefore lacked authority to remove providers from the approved list for failure to recommend standards-compliant treatment in such cases. However, effective June 2, 2008, section 16–11.8–103(4)(b)(II) was amended by the addition of the italicized language set forth below, and now provides that the DV Board shall:

Adopt and implement guidelines and standards for a system of programs for the treatment of domestic violence offenders that shall be utilized by offenders who have committed a crime, the underlying factual basis of which has been found by the court on the record to include an act of domestic violence, and who are placed on probation, placed on parole, or placed in community corrections *or who receive a deferred judgment and sentence.*

(Emphasis added.)

Plaintiffs concede that this statutory change has rendered their initial contention moot.

### B. Treatment Recommended in Presentence Evaluations Must Conform with DV Standards

Plaintiffs contend that domestic violence evaluators are not required to recommend

domestic violence treatment and that, if they decline to do so and instead recommend some other form of treatment, the DV Standards do not apply. We conclude that, whenever treatment of domestic violence offenders is recommended, it must conform with the DV Standards.

In creating the DV Board and enacting statutes addressing management of domestic violence offenders, the General Assembly recognized the need for a "consistent and comprehensive evaluation, treatment, and continued monitoring of domestic violence offenders who have been convicted of, pled guilty to, or received a deferred judgment or prosecution for any crime the underlying factual basis of which includes an act of domestic violence" and who are subject to the supervision of the criminal justice system. § 16–11.8–101. Therefore, the General Assembly created "a program that standardizes the evaluation, treatment, and continued monitoring of domestic violence offenders at each stage of the criminal justice system." *Id.* To achieve its stated purpose, the General Assembly also required that *"any person who is convicted of any crime,* the underlying factual basis of which has been found by the court on the record to include an act of domestic violence … *shall be ordered to complete a treatment program and a treatment evaluation that conform with the [DV Standards]."* § 18–6–801(1)(a), C.R.S.2008 (emphasis added).

Plaintiffs conceded at oral argument, and we agree, that offenders who plead guilty under the pilot program are persons "convicted" of a domestic violence crime, even though the term of probation or of a deferred sentence has not yet been determined. *See Hafelfinger v. District Court,* 674 P.2d 375, 376 (Colo.1984); *Jeffrey v. District Court,* 626 P.2d 631, 635–36 (Colo.1981). By its plain language, section 18–6–801(1)(a) requires these offenders to be ordered "to complete a treatment program and a treatment evaluation that conform with the [DV Standards]."

In arguing for a contrary conclusion, plaintiffs rely on the following subsection, which states:

> The court may order a treatment evaluation to be conducted prior to sentencing if

a treatment evaluation would assist the court in determining an appropriate sentence.... If such treatment evaluation recommends treatment, and if the court so finds, the person shall be ordered to complete a treatment program that conforms with the standards adopted by the [DV Board] as required by section 16–11.8–104, C.R.S.

§ 18–6–801(1)(b), C.R.S.2008.

We agree with plaintiffs that there is language in section 18–6–801(1)(b) ("[i]f such treatment evaluation recommends treatment …") that appears to recognize that treatment may not always be recommended. However, to the extent this acknowledgement is inconsistent with the broad language of section 18–6–801(1)(a), it does not change the result here. Section 18–6–801(1)(b) unambiguously requires that, if treatment is recommended, the treatment program must conform with the DV Standards.

Plaintiffs point out that providers who participate in the pilot program sometimes prescribe forms of treatment that are other than "domestic violence treatment," and they argue that the DV Board is not authorized to require compliance with the DV Standards in such circumstances. However, section 18–6–801(1)(a) and (b) do not qualify the term "treatment." Thus, on their face, the statutes do not exempt from compliance with DV Standards any form of treatment ordered for domestic violence offenders.

We do not agree with plaintiffs that such a limitation on the DV Board's authority may be gleaned from the statement in section 16–11.8–103(4)(b)(II) that the DV Board's programs for domestic violence offenders "shall be as flexible as possible" and shall afford a "continuum of treatment programs." Those references do not permit us to disregard either the plain language of section 18–6–801(1)(a) and (b) or the General Assembly's stated intent to establish "consistent and comprehensive" domestic violence offender evaluation and treatment, § 16–11.8–101, by using a "standardized procedure" adopted and implemented by the DV Board. § 16–11.8–103(4)(b)(I), C.R.S.2008.

We also note that, when the General Assembly intended to exempt certain domestic violence offenders from treatment and evalu-

ation conforming with DV Standards, it did so expressly. Section 18–6–801(2), C.R.S. 2008, states that the evaluation and treatment requirements described in 18–6–801(1) "shall not apply to persons sentenced to the department of corrections." *See People v. Torres*, 141 P.3d 931, 936 (Colo.App.2006). There is no similar exception for any specific form of "treatment" for domestic violence offenders.

Thus, we find nothing in the statutes that would limit the DV Board's authority to require that treatment recommended under the pilot program conform with the DV Standards.

Finally, as the trial court concluded, the DV Board has the authority to impose sanctions, including removing a treatment provider from the approved provider list, for noncompliance with the DV Standards. *See* § 16–11.8–103(4)(b)(III)(D), C.R.S.2008 ("Notwithstanding any action taken by the department of regulatory agencies against a treatment provider, the [DV Board] may take action against a treatment provider including, but not limited to, removing a treatment provider from the approved provider list.").

The judgment is affirmed.

Judge RUSSEL and Judge GABRIEL concur.