The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 9, 2018

## 2018COA116

## No. 16CA1951 Marriage of Morgan — Family Law — Uniform Dissolution of Marriage Act — Parenting Time

A division of the court of appeals reaffirms the supreme court's decision in *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005), holding that when a parent indicates before permanent orders that he or she wishes to relocate, the court must allocate parenting time assuming that the parent will move. Yet many parents admit that they will not actually relocate if the children are ordered to remain in Colorado. Often, courts will allocate parenting time based upon that admission (i.e., as though the parent will *not* move). The division reiterates that *Spahmer* gives no authority to disregard the parent's stated intention to relocate, reverses the parenting time

order, and remands for the magistrate to enter a new parenting time order based on mother's stated intention to relocate.

Court of Appeals No. 16CA1951
Weld County District Court No. 14DR30427
Honorable Ryan L. Kamada, Judge

In re the Marriage of

Carol Crosley Morgan,

Appellant,

and

Carter Edward Morgan,

Appellee.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE FOX
Webb and Richman, JJ., concur
Prior Opinion Announced June 28, 2018 <u>WITHDRAWN</u>

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(e)" ON June 28, 2018, IS NOW DESIGNATED FOR PUBLICATION

Announced August 9, 2018

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado; Ericka J.A. Fowler, Boulder, Colorado, for Appellant

Antolinez Miller LLC, Joseph H. Antolinez, Melissa E. Miller, Centennial, Colorado, for Appellee

¶ 1    In this dissolution of marriage proceeding, Carol Crosley Morgan (mother) appeals that portion of the permanent orders allocating parental responsibilities for her two minor children with Carter Edward Morgan (father).  We reverse the parenting time order and remand for the magistrate to enter a new parenting time order based on mother's stated intention to relocate to California.  In all other respects, we affirm.

## I.  Background

¶ 2    Well before the permanent orders hearing, mother notified the magistrate that she wished to move with the children to California.  She sought orders that would name her the children's primary residential parent and decision-maker.

¶ 3    The parents agreed that Dr. Kevin Albert would conduct a parental responsibilities evaluation (PRE) to assess the parenting issues, including mother's proposed move.  Dr. Albert recommended that the children be allowed to relocate to California with mother and that she should have sole decision-making responsibility.

¶ 4    At father's request, the magistrate appointed Beth Lieberman to perform a supplemental PRE.  Ms. Lieberman recommended that

the children remain in Colorado with father with shared decision-making responsibilities with mother.

¶ 5    After a two-day evidentiary hearing, the magistrate ordered the children to remain in Colorado. He found that their best interests would be served if the parents exercised equal parenting time, with mutual decision-making responsibilities.

## II. The Magistrate Did Not Follow *Spahmer*

¶ 6    When, as here, a parent indicates before permanent orders that she intends to move, a district court has no statutory authority to order her to live in a specific location. *See Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005). Rather, "in the initial determination of parental responsibilities . . . a [district] court must accept the location in which each party intends to live, and allocate parental responsibilities, including parenting time, accordingly." *Id.* at 164; *see also* § 14-10-124(1.5)(a)(VIII), C.R.S. 2017 (requiring the court to consider "[t]he physical proximity of the parties to each other as this relates to the practical considerations of parenting time").

¶ 7    Mother contends that the magistrate failed to follow this principle by entering a parenting time order requiring her to remain

2

in Colorado.  We review de novo whether the magistrate applied the proper legal standard, *see In re Parental Responsibilities of Reese*, 227 P.3d 900, 902 (Colo. App. 2010), and agree.

¶ 8    Mother never wavered from her stated position that she intended to move to California after the divorce was completed.  She informed the magistrate of her intention in a written notice of intent to relocate, at the temporary orders hearing, via two parental evaluators, in the joint trial management certificate, and at the permanent orders hearing.  The magistrate confirmed that mother "very clearly" stated her wish to move to California and acknowledged that, under *Spahmer*, his parenting time orders must assume she would move.

¶ 9    But the magistrate did not then adhere to the *Spahmer* analysis and enter parenting time orders that assumed mother would live in California.  Instead, the magistrate ordered the children to remain in Colorado and issued a year-round 5-2-2-5 parenting time schedule, the terms of which required the parties to exchange the children on Monday, Wednesday, and every other Friday.  This order is impractical to implement if mother lives in California.  *See, e.g., Jacob A. v. C.H.*, 127 Cal. Rptr. 3d 611, 617,

3

620 (Cal. Ct. App. 2011) (holding that a 5-2-2-5 parenting plan is not an option when the parents plan to live in different states). Moreover, the order implicitly requires mother to live in a specific location (Colorado). *Cf. Spahmer*, 113 P.3d at 162.

¶ 10    In *Spahmer*, the supreme court reversed a parenting time order that required the child's mother to remain in Colorado, in close proximity to the child's father, over her stated intent to relocate to Arizona. *Id.* at 164. The court noted that mother's plans were unambiguous — she had testified that she wanted to live in Arizona to have family support and to pursue job opportunities and had premised her proposed parenting time schedule on her living in Arizona. *Id.* Accordingly, the district court should have allocated parenting time with the understanding that mother was intending to live in Arizona and father in Colorado. *Id.* By failing to do so, the court did not properly take into account the parties' physical proximity to each other, thereby abusing its discretion and exceeding its statutory authority. *Id.*; *see also* § 14-10-124(1.5)(a)(VIII).

¶ 11    Similarly here, mother's request was neither ambiguous nor uncertain. Mother stated her intention at least five times during

the proceedings and submitted a proposed parenting plan premised on her relocation. Additionally, she testified that she wanted to move because she had an "incredible" family support system in California; she grew up there, and the area was familiar and comfortable; she and the children could "get away from a lot of the negativity that has developed" in Colorado; and she and father would better be able to work together to be good parents. She also testified that she had "endless" job opportunities in California, had inquired about therapy for herself and the children, had "a pediatrician lined up," knew which schools the children would attend, and had looked into sports programs for the children.

¶ 12　　True, mother admitted that she would not move without her children if they were ordered to remain in Colorado with father. Father asserts that this admission makes mother's request "ambiguous." Considering the evidence showing the number of times mother stated her intention to move and her reasons for relocating, we disagree.

¶ 13　　Father also asserts that when a parent admits he or she will not move without the children, *Spahmer* does not require the "[district] court to participate in 'make believe' and pretend that

[m]other will live in California when analyzing what the best interests of the children would look like if it were to place the children with [f]ather in Colorado."

¶ 14    Yet this is exactly what *Spahmer* requires. Mother said in no uncertain terms that she wanted to move to California — that is the premise from which the legal analysis must begin. *See Spahmer,* 113 P.3d at 164; *see also Jacob A.,* 127 Cal. Rptr. 3d at 617 (stating that the court must treat a parent's plan to move "as a serious one and must decide the custody issues based upon that premise" (quoting *Ruisi v. Thieriot,* 62 Cal. Rptr. 2d 766, 771 (Cal. Ct. App. 1997))); *In re Marriage of Hall,* 241 P.3d 540, 543 (Colo. 2010) (holding that the potential relocation of a parent is a fundamental part of a parenting time determination). Mother's admission that she would not "abandon" her children and move without them did not relieve the magistrate of his obligation to make the difficult decision to allocate parenting time with mother in California and father in Colorado. *See In re Marriage of Ciesluk,* 113 P.3d 135, 147 (Colo. 2005) ("Child parenting disputes present agonizing decisions for [district] court judges.").

¶ 15    Accordingly, we reverse the parenting time order.  On remand, the magistrate must accept the location in which each party intends to live (father in Colorado, mother in California) and allocate parenting time accordingly.  The magistrate has no authority on remand to issue an order that effectively coerces mother into abandoning her plans to relocate to California.  *See Jacob A.,* 127 Cal. Rptr. 3d at 620 (holding that the decision to move a child away from one of his or her parents "cannot be avoided by coercing the moving parent into staying or prohibiting her from moving").

### III.  Other Parenting Time Considerations

¶ 16    Because it may arise on remand, we briefly address mother's contention that the magistrate ignored section 14-10-124(4) when fashioning parenting time.

¶ 17    A district court must allocate parenting time in accordance with the best interests of the child, applying the factors in section 14-10-124(1.5)(a) and giving paramount consideration to the physical, mental, and emotional conditions and needs of the child.  *See Spahmer,* 113 P.3d at 159, 162.

¶ 18    However, if domestic violence is an issue in the case, the court must also consider the factors in section 14-10-124(4).  *See* § 14-10-124(1.5)(a).  As relevant here:

> (d) When the court finds by a preponderance of the evidence that one of the parties has committed child abuse or neglect, domestic violence, or sexual assault resulting in the conception of the child, the court shall consider, as the primary concern, the safety and well-being of the child and the abused party.
>
> (e) When the court finds by a preponderance of the evidence that one of the parties has committed child abuse or neglect, domestic violence, or sexual assault resulting in the conception of the child, in formulating or approving a parenting plan, the court shall consider conditions on parenting time that ensure the safety of the child and of the abused party.

§ 14-10-124(4).

¶ 19    The magistrate found that father had committed domestic violence and that a permanent protection order (PPO) had been issued against him.  Hence, these sections are relevant to the magistrate's parenting time consideration and he must consider them on remand.  *See id.*

## IV. Decision-Making Responsibilities

¶ 20    Mother contends that the magistrate erred in ordering mutual decision-making responsibilities over her objection and in the absence of credible evidence that the parents could work together. We disagree.

¶ 21    An allocation of decision-making responsibility requires the district court to consider the nine parenting time factors in section 14-10-124(1.5)(a) and three decision-making factors in paragraph (b) of the same subsection. This analysis occurs even in cases involving domestic violence: "The court shall consider the additional factors set forth in paragraphs (a) and (b) of subsection (1.5) of this section in light of any finding of child abuse or neglect, domestic violence, or sexual assault resulting in the conception of a child pursuant to this subsection (4)." § 14-10-124(4)(b).

¶ 22    When, as here, the court finds by a preponderance of the evidence that one of the parties has committed domestic violence,

> [i]t shall not be in the best interests of the child to allocate mutual decision-making responsibility over the objection of the other party . . . unless the court finds that there is credible evidence of the ability of the parties to make decisions cooperatively in the best

interest of the child in a manner that is safe
for the abused party and the child.

§ 14-10-124(4)(a)(II)(A).

¶ 23 The allocation of decision-making responsibilities is within the sound discretion of the district court. *See Reese*, 227 P.3d at 902.

¶ 24 Relying on section 14-10-124(4)(a)(II)(A), the magistrate found that mother objected to mutual decision-making and, therefore, he presumed that such an order was not in the children's best interests. Supporting her position on this issue, mother presented Exhibit M, a 614-page record of the parents' communications on Talking Parents. Mother asserted that Exhibit M demonstrated that the parties had "little success" resolving child-related issues.

¶ 25 The magistrate found differently, and concluded that the evidence rebutted the presumption that mutual decision-making was not in the children's best interests. He found that "[i]f you can get through that Exhibit M, the results are [the parties] were making decisions." And he found that "[e]ven during this hotly contested case, the parties were able to make joint decisions like choosing a therapist, scheduling dental appointments, adjusting exchange times, discussing illnesses, [and] discussing activities,

[and] schedules." He agreed with the statements of both PREs that the parties had the capacity to work together and make decisions in the children's best interests.

¶ 26    These findings, which enjoy record support, reflect the magistrate's consideration of the domestic violence issue and the children's best interests. *See* § 14-10-124(1.5)(a), (4). We discern no abuse of discretion in the order for mutual decision-making responsibility. *See Reese*, 227 P.3d at 902.

¶ 27    Insofar as mother argues that the magistrate entered the order without concern for her safety, we disagree. *See* § 14-10-124(4)(d). When fashioning a parenting plan that ensures the safety of the child and the abused party, the district court may enter "[a]n order limiting contact between the parties to contact that the court deems is safe and that minimizes unnecessary communication between the parties." § 14-10-124(4)(e)(I).

¶ 28    The crux of mother's "safety" argument is that father harassed her and violated the PPO through Talking Parents, a website that allows parties to discuss matters relating to their children. However, at mother's request, the parties agreed to stop using Talking Parents after permanent orders and start using Civil

11

Communicator, which she described as a "structured form of communication where messages are reviewed for appropriateness."

¶ 29    In adopting this agreement and ordering the use of Civil Communicator, we may presume that the magistrate impliedly found that its use would alleviate mother's concerns and provide a safe way for her to communicate with father regarding the children. *See id.*; *see also In re Marriage of Nelson*, 2012 COA 205, ¶ 41 (upholding district court's decision based on its implied findings, which were sufficient).

## V.  Exhibit T

¶ 30    Mother contends that the magistrate erred in reviewing an irrelevant exhibit, Exhibit T, when allocating parenting time. Exhibit T is a district court order from an unrelated domestic relations case that father submitted as "authority from another court in Adams County on [its] interpretation of the *Spahmer* case." The mother in that case intended to move to Washington but stated that she would remain in Colorado if she could not move with one or both of the children.  Relying on her statement, the Adams County court disregarded *Spahmer* and issued its parenting time orders by assuming that mother would remain in Colorado.  Mother

12

argues that Exhibit T improperly influenced the magistrate's decision here.

¶ 31    In light of our disposition that the magistrate must allocate parenting time assuming mother will move to California, this issue is moot. *See Anderson v. Applewood Water Ass'n*, 2016 COA 162, ¶ 31 ("A claim is moot when prospective relief is unnecessary to remedy an existing controversy or prevent its reoccurrence.").

## VI.  Mother's Request for Appellate Attorney Fees

¶ 32    Asserting she is at a financial disadvantage, mother requests an award of her attorney fees under section 14-10-119, C.R.S. 2017.  She may raise this issue to the district court on remand. *See In re Marriage of Rivera*, 2013 COA 21, ¶ 25.

## VII.  Conclusion

¶ 33    That part of the judgment allocating parenting time is reversed, and the case is remanded with directions to enter a new parenting time plan in accordance with *Spahmer*.  Because the magistrate's order was entered more than one year ago, the magistrate should take additional evidence on the children's current circumstances on remand.  *See In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 27.  The existing

13

allocation of parental responsibilities shall remain in place pending new orders on remand.  *See id.*

¶ 34    In all other respects, the judgment is affirmed.

JUDGE WEBB and JUDGE RICHMAN concur.