24CA0875 Marriage of Walden 04-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0875
City and County of Denver District Court No. 22DR31140
Honorable Andrew P. McCallin, Judge

In re the Marriage of

Amelia Walden,

Appellant,

and

David Walden,

Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TAUBMAN*
Dunn and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

Wells Family Law, P.C., Kaela Zihlman, Denver, Colorado, for Appellant

Smith Balicki Finn Laraway, LLC, Ashley L. Balicki, William D. Taylor,
Centennial, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this dissolution of marriage proceeding, Amelia Walden (mother) appeals part of the district court's permanent orders allocating joint decision-making responsibility between her and David Walden (father) and rejecting her assertion that domestic abuse and child abuse allegations warranted a different result. We affirm.

## I.     Background

¶ 2     Mother and father were married in 2018. They share parental responsibilities for their son, born in 2021. In May 2022, an altercation ensued which resulted in father being arrested and charged with assault, disturbing the peace, destruction of private property, and wrongs to minors. Father agreed to a deferred judgment on the latter charge, and it was later dismissed.

¶ 3     Not long after the altercation, mother filed her petition for dissolution of marriage. In that proceeding, the parties filed a signed memorandum of understanding resolving the issue of parenting time ("memorandum"). The memorandum required regular and frequent communication between mother and father via

the communication app TalkingParents[1] regarding emergencies and updates in their son's life, discussions about scheduling of routine appointments for him, and advance notice of his extracurricular and school-related events. The memorandum also detailed schedules for parenting time; their son's whereabouts; and agreements concerning the parents' sobriety and mental health, social media and privacy as it related to their son; and long-term decisions such as prohibited punishments and recreational activities.

¶ 4 The district court held a permanent orders hearing to address outstanding issues on decision-making responsibility and spousal/child support. Mother argued that the May 2022 altercation constituted domestic violence and child abuse, and there was no evidence to prove that she and father could make decisions cooperatively in the best interest of their son and in a

---

[1] TalkingParents is a website that parties in domestic relations litigation use to discuss matters relating to their children. *In re Marriage of Morgan*, 2018 COA 116M, ¶ 28, 428 P.3d 550, 554. It was created to address "poor communication between co-parents and a lack of reliable records." TalkingParents, https://talkingparents.com/about-us (last visited Mar. 13, 2025).

manner that was safe to the abused party as required under section 14-10-124(4)(a)(I) and (II), C.R.S. 2024.

¶ 5     At the hearing, mother, father, and the court-appointed child and family investigator ("CFI") testified about the May 2022 altercation and related matters.

¶ 6     On the domestic violence argument, the court found that father had committed an act of domestic violence against mother. However, the court found that the parties could communicate cooperatively and ordered the parties to exercise joint decision-making responsibility under section 14-10-124(a)(II)(A).

¶ 7     As to the child abuse argument, the court found that father had successfully completed his deferred judgment and sentence, and that the wrongs to minors conviction had been dismissed and sealed. It held that the deferred judgment was not for child abuse or neglect under section 18-6-401, C.R.S. 2024, and therefore section 14-10-124(4)(a)(I) did not apply.

¶ 8     That same day, the court issued partial permanent orders memorializing its findings, as well as approving the memorandum. The court later issued an amended decree of dissolution of marriage

and permanent orders adopting the partial permanent orders, and a support order.

¶ 9 Mother now appeals the court's allocation of joint decision-making responsibility.

## II. Standard of Review

¶ 10 A district court has broad discretion to allocate decision-making responsibilities. *See In re Marriage of Morgan,* 2018 COA 116M, ¶ 23, 428 P.3d 550, 554. We therefore review district court orders allocating decision-making responsibilities for abuse of discretion. *Id.* at ¶ 26, 428 P.3d at 554; *see Spahmer v. Gullette,* 113 P.3d 158, 161 (Colo. 2005).

¶ 11 A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapprehension or misapplication of the law. *Spahmer,* 113 P.3d at 161. We will uphold a court's allocation of decision-making responsibilities when the evidence supports it. *Morgan,* ¶ 26, 428 P.3d at 554.

### III. Analysis

#### A. Domestic Violence Allegations

¶ 12      Mother makes two arguments related to the district court allocating joint decision-making responsibilities to the parents: that the court failed to consider the totality of section 14-10-124(4)(a)(II)(A), and that it failed to consider substantial evidence that joint decision-making would not be safe for mother.

¶ 13      Because these arguments both rest on the assertion that the court ignored the provision of this statute that requires consideration of mother's safety, we consolidate them into the contention that the court did not consider the statutory provisions relating to the safety of the abused parent and therefore did not consider the totality of the statute.  We reject mother's contention.

¶ 14      Under section 14-10-124(4)(a)(II)(A), if a court finds by a preponderance of the evidence that a party in a dissolution proceeding committed domestic violence, it is not in the best interest of the child to allocate joint decision-making responsibility over the objection of the abused party unless the court finds credible evidence of the ability of the parties to decide matters

5

cooperatively in the best interest of the child in a manner that is safe for the abused party and the child.

¶ 15    While express findings are preferred, the court's findings here are sufficiently explicit to give us a clear understanding of the basis of its order. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9, 466 P.3d 968 ("The district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order."). If the district court orders joint decision-making responsibility and the record supports the finding that the parties can work cooperatively, then the court has not abused its discretion even if it has found domestic violence was committed. *Morgan*, ¶¶ 25-26, 428 P.3d at 554.

¶ 16    In its oral ruling, the court stated that it had considered mother's concerns about being retraumatized if the court awarded joint decision-making responsibility. However, the court also recognized that father understood the terms of the protection order to mean his communication with mother had to be limited to updates on their son, and that he could communicate with mother only through TalkingParents in accordance with that protection order. The court ordered the continued use of TalkingParents as

6

the exclusive form of communication between them in accordance with the parties' memorandum.

¶ 17     In her reply brief, mother tries to distinguish *Morgan* by stating the court in *Morgan* "expressly made findings and fashioned its orders regarding consideration of the mother's safety," citing the court's order to switch communication methods from TalkingParents to Civil Communicator, another communications app.  However, the *Morgan* order resulted from the mother there identifying specific instances of the father violating his protection order to harass her through TalkingParents, as well as the parties' agreement to use another communication program.  *Id.* at ¶¶ 28-29, 428 P.3d at 554-55.

¶ 18     In this case, by contrast, mother provided no examples to demonstrate that continued use of TalkingParents was unsafe for her.  To the contrary, the parties' memorandum detailed an agreed-upon use of TalkingParents to regularly update each other on their son's life, coordinate schedules, and discuss aligning their son's routine and diet.  Further, the CFI found that the parties were able to engage in "healthy and productive communications."

¶ 19    Because the court considered mother's argument in light of section 14-10-124(4)(a)(II)(A), we conclude that the court did not abuse its discretion when it allocated joint decision-making responsibility to the parties.

## B.    Child Abuse Allegations

¶ 20    Mother next argues that the district court erred by finding that father did not commit child abuse under section 14-10-124(4)(A)(I). We disagree.  As with mother's contentions regarding domestic violence, we consolidate her two arguments regarding child abuse into one.

¶ 21    Where a claim of child abuse is made, the court shall consider "[w]hether one of the parties has committed an act of child abuse or neglect as defined in section 18-6-401, C.R.S. [2024], or as defined under the law of any state, which factor must be supported by a preponderance of the evidence."  § 14-10-124(4)(a)(I).

¶ 22    Under D.R.M.C. section 34-46:

> (a) It shall be unlawful for any person knowingly, intentionally or negligently and without justifiable excuse, to cause:
> (1) The life of a minor to be endangered;
> (2) The health or physical well-being of a minor to be injured or endangered;
> (3) The punishment or tormenting of any minor not in the legal care, custody or control of such person; or

8

> (4) The endangerment or impairment of the morals of any minor.

D.R.M.C. § 34-46(a). The ordinance includes a host of other infractions that amount to a wrong to a minor under this section, including abandonment, neglect, and cruelty on the part of a legal caregiver, D.R.M.C. § 34-46(b), and providing a firearm to or failing to remove a firearm from the possession of a minor, D.R.M.C. § 34-46(c)-(e).

¶ 23    Here, the parties dispute the application of D.R.M.C. section 34-46(a) to section 18-6-401(1)(a). That statute provides:

> A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

§ 18-6-401(1)(a).

¶ 24    In a separate case, father was charged with wrongs to minors under D.R.M.C. section 34-46. However, he successfully completed a deferred judgment and sentence on that charge, so the case was

9

dismissed and sealed. Father argues that his successful completion of the deferred judgment and the sealing of that case meant it was legally proper for the district court not to consider the charge.

¶ 25 A deferred judgment "is not a conviction [or] a sentence" but, rather, "a dispositional alternative imposed *in lieu of* a judgment and sentence." *DePriest v. People*, 2021 CO 40, ¶ 13, 487 P.3d 658 (quoting *People v. Anderson*, 2015 COA 12, ¶ 15, 348 P.3d 491). Upon successful completion of a deferred judgment, a defendant withdraws a guilty plea and the charge is dismissed with prejudice. *People v. Widhalm*, 642 P2d 498, 500 (Colo. 1982).

¶ 26 How a court reviews the underlying facts of a successfully completed deferred judgment, however, varies depending on the circumstance. *See, e.g., McCulley v. People*, 2020 CO 40, 463 P.3d 254 (holding that successful completion of a deferred judgment results in the charge being dismissed with prejudice). *But see, e.g., Partners in Change, L.L.C. v. Philp*, 197 P.3d 232, 234 (Colo. App. 2008) (holding that successful completion of a deferred judgment did not absolve a plaintiff of his required compliance with the domestic violence standards because the controlling statute

10

extended continued compliance to individuals who receive a deferred judgment).

¶ 27    Although no binding authority addresses how a deferred judgment may impact a district court's child abuse determination analysis under section 14-10-124(4)(a)(I), we do not need to address this issue here because our conclusions would not affect our resolution of this issue. The wrongs against minors ordinance contains provisions not covered in the Colorado Revised Statutes, and nothing in the record indicates what provision of the D.R.M.C. applied to father's deferred judgment. Thus, we need not discuss whether a deferred judgment on a child abuse conviction suffices to find that father committed child abuse in a case when the record does not show whether father's deferred judgment was premised on the provision of the D.R.M.C. that overlaps section 18-6-401. Instead, we affirm the district court's ruling because the record supports the district court's finding that father did not commit child abuse as defined by section 18-6-401.

¶ 28    Mother contends that the court erroneously applied the D.R.M.C. provision rather than section 18-6-401, as required by section 14-10-124(4)(a)(I). We reject this contention because

11

mother misapprehends the district court's holding. The court addressed D.R.M.C. section 34-46 because father's deferred judgment was based on it, and therefore it could serve as evidence to prove that father had committed child abuse as defined in section 18-6-401.

¶ 29     However, the court determined that certain provisions of D.R.M.C. section 34-46 did not fall within the statutory definition of child abuse. We agree with this conclusion.

¶ 30     While the Denver ordinance and the child abuse statute overlap, each contains offenses that may violate one provision but not the other. Specifically, D.R.M.C. section 34-46(a)(4) identifies the "endangerment or impairment of the morals" of a minor as a punishable offense, while section 18-6-401 contains no comparable provision. Significantly, father's deferred judgment did not specify the D.R.M.C. provision to which he was admitting guilt.

¶ 31     None of the parties here identified, on appeal or in the district court, which provision of D.R.M.C. section 34-46 applied to father's charged actions. Absent clarification as to what provision of D.R.M.C. section 34-46 applied to father's criminal case, the court found that mother failed to prove by a preponderance of the

evidence that father had committed child abuse as defined in section 18-6-401.

¶ 32     Mother nevertheless maintains that her testimony regarding the May 2022 altercation constituted sufficient evidence for the court to find that father's acts amounted to child abuse under section 18-6-401, and that the court's finding otherwise was therefore an abuse of discretion. However, her testimony, which the court acknowledged in its findings, does not negate the contrary evidence considered by the court, and certainly does not prove that the court abused its discretion in determining that father had not committed child abuse.

¶ 33     Consequently, we conclude that the court did not abuse its discretion in finding that father's actions did not amount to child abuse by a preponderance of the evidence.

IV.    Disposition

¶ 34     The district court's judgment and related orders are affirmed.

JUDGE DUNN and JUDGE TOW concur.