25CA2071 Marriage of Goodvin 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2071
Weld County District Court No. 24DR510
Honorable Troy Hause, Judge

---

In re the Marriage of

Jamie Irene Goodvin,

Appellee,

and

Timothy Adam Goodvin,

Appellant.

---

APPEAL DISMISSED IN PART
AND JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

No Appearance for Appellee

Timothy Adam Goodvin, Pro Se

¶ 1     In this dissolution of marriage case involving Timothy Adam Goodvin (father) and Jamie Irene Goodvin (mother), father appeals the portions of the district court's permanent orders addressing the allocation of parental responsibilities (APR), property division, and the determination of spousal maintenance and child support.  We dismiss the appeal, in part, and otherwise affirm the judgment.

## I.     Relevant Facts

¶ 2     In May 2024, mother petitioned for dissolution after fourteen years of marriage and two children.  At the same time, mother asked for, and the court granted, a temporary protection order requiring father to stay at least 500 yards away from her.  She also filed a motion to restrict father's parenting time under section 14-10-129(4), C.R.S. 2025.  In that motion, she alleged that the children were in imminent danger while in father's care because he was mentally unstable, had threatened suicide, and had "anger issues."  The court temporarily restricted father's parenting time.

¶ 3     Within a month, the district court held a hearing on whether to make the temporary protection order permanent and whether to continue the restriction on father's parenting time.  The court denied mother's request for a permanent protection order against

father.  After finding that the children were afraid of having unsupervised contact with father, the court ordered that his parenting time occur under the supervision of a family therapist.

¶ 4      In August 2025, the district court held a two-day permanent orders hearing, at the conclusion of which it made oral findings of fact and conclusions of law.  In a subsequent written judgment, the court made the following findings regarding the APR:

- Father committed acts of domestic violence against mother throughout the marriage.

- Father's testimony that he was a stay-at-home parent during the marriage was not credible.  Instead, the credible evidence established that he was "absent as an active parent for extended periods."

- Mother had historically been the children's primary parent.

- An expert in family counseling who was supervising father's parenting time and who was the "most credible witness regarding what is in the children's best interests" testified on that issue.

- The children were initially resistant to participating in supervised parenting time with father based on incidents predating the parties' separation. The expert opined that the children's apprehensions and fears were credible, and they remained concerned about their parents having contact. In addition, the expert said that the children were "uncomfortable in a vehicle with [f]ather at this time."

- The expert "observed good interactions" between father and the children during supervised parenting time; however, the expert said that the children were "now more comfortable with contact with [f]ather."

- The expert recommended that father move from restricted therapeutic visits with the children to restricted monitored visits.

- The parties should consider putting the children in family therapy "to focus on the children's needs, assisting the children in navigating the high conflict, and assisting the children in having a healthy relationship" with both parents.

¶ 5     The district court made the following findings regarding property division:

- Mother's office property was worth $154,000 and was encumbered by a $120,000 loan, leaving $34,000 in equity that was marital property subject to division.

- Mother held a 5% interest in real property in Longmont through her ownership in Fulton Investments, LLC. Both parties valued the interest at $15,000, and mother credibly testified that the Longmont property was encumbered by a $13,700 loan, leaving $1,300 in equity, which was marital property subject to division.

- Father testified that he did not know the current value of mother's Porsche. Mother credibly testified that she owed more than what the vehicle was worth.

- The parties agreed that mother's only retirement account was worth $13,797.

- Early in the marriage, both parties contributed substantially to the marital estate. However, once father became self-employed, his financial support for the

4

marital estate stopped. As a result, mother became the family's primary parent and provider.

- "Given the totality of the evidence," an unequal property division in favor of mother was equitable.

¶ 6 Lastly, the district court made the following findings concerning spousal maintenance and child support:

- Mother underreported her income and was not credible regarding her business expenses, which she overstated by at least $2,400. After subtracting her business expenses from her gross receipts and adding $2,400, her gross monthly income was $7,000.

- Father was either voluntarily underemployed or voluntarily unemployed and could earn $3,033 per month.

¶ 7 From those findings, the district court determined that, to serve the children's best interests and protect their emotional well-being, mother would be the primary residential parent and father would have only restricted "monitored" parenting time for two hours each week. Given the domestic violence finding and the

parties' "high conflict," the court named mother the children's sole decision-maker, except as to certain extracurricular activities.

¶ 8    The district court then divided the marital estate as follows:

| Marital Asset/Debt | Net Marital Value | Mother's Portion | Father's Portion |
|---|---|---|---|
| Marital Residence | $518,555 | $518,555 | |
| Mother's Office Property | $34,000 | $34,000 | |
| Longmont Real Property (through Fulton Investments LLC) | $1,300 | $1,300 | |
| Vehicles | $62,600 | $10,000 | $52,600 |
| Porsche | ($21,371) | ($21,371) | |
| Bank Accounts | $11,580 | $11,547 | $33 |
| Mother's Retirement Account | $13,797 | $13,797 | |
| "Equalization" Payment | | ($192,688) | $192,688 |
| TOTAL | | $375,140 | $245,321 |

In making this division, the court noted that father had $48,153 in a trust that was his separate property.

¶ 9    In addition, the district court ordered mother to pay father the maintenance guideline amount of $735 per month for three years,

affording him time to find suitable employment. The court directed father to pay mother monthly child support of $739.

## II. Missing Hearing Transcripts

¶ 10 To begin, we note that father did not provide us with the transcripts of the two-day permanent orders hearing or the district court's oral ruling.

¶ 11 As the appellant, father bears the responsibility to include in the appellate record all transcripts necessary for us to resolve the issues he raises in this appeal. C.A.R. 10(d)(3). That gap in the record has significant consequences because, as a matter of law, we must presume that the missing portions of the record support the district court's findings and conclusions. *See In re Marriage of Beatty*, 2012 COA 71, ¶ 15, 279 P.3d 1225, 1229 (stating that, absent a transcript, the appellate court must presume that the evidence supports the district court's findings); *see also In re Marriage of Dean*, 2017 COA 51, ¶ 13, 413 P.3d 246, 250 ("Where the appellant fails to provide . . . a transcript, the [appellate] court must presume that the record supports the judgment."); *McCall v. Meyers*, 94 P.3d 1271, 1272 (Colo. App. 2004) ("A party cannot overcome a deficiency in the record by statements in the briefs.").

¶ 12    We are mindful that father is pro se.  However, "[a self-represented] litigant who chooses to rely upon his own understanding of legal principles and procedures is required to follow the same procedural rules as those who are qualified to practice law and must be prepared to accept the consequences of his mistakes and errors."  *Rosenberg v. Grady*, 843 P.2d 25, 26 (Colo. App. 1992).

### III.    APR

### A.    Standard of Review

¶ 13    A district court has broad discretion when allocating parental responsibilities.  *See In re Marriage of Collins*, 2023 COA 116M, ¶ 8, 544 P.3d 1258, 1265 (addressing parenting time); *see also In re Marriage of Morgan*, 2018 COA 116M, ¶ 23, 428 P.3d 550, 554 (addressing decision-making responsibility).

¶ 14    We will not disturb the district court's decision absent a showing that the court abused its discretion, meaning that it misapplied the law or acted in a manifestly arbitrary, unreasonable, or unfair manner.  *See Collins*, ¶ 8, 544 P.3d at 1265 (addressing parenting time); *see also Morgan*, ¶ 26, 428 P.3d at 554 (addressing decision-making responsibility).

¶ 15    We review de novo whether the district court applied the correct legal standard in making its APR decision. *In re Marriage of Crouch*, 2021 COA 3, ¶ 21, 490 P.3d at 1091.

### B.    Restriction of Father's Parenting Time

¶ 16    Father contends that, once the district court denied mother's request for a permanent protection order, his emergency parenting time restriction should have "evaporated." We dismiss this part of the appeal.

¶ 17    Temporary orders terminate "when the final decree is entered." § 14-10-108(5)(c), C.R.S. 2025; *see In re Marriage of Salby*, 126 P.3d 291, 295 (Colo. App. 2005). Thus, a party seeking review of a temporary parenting time order must pursue appropriate relief through a C.A.R. 21 petition. *People in Interest of M.W.*, 140 P.3d 231, 233 (Colo. App. 2006) (Because "temporary custody orders are not subject to appeal, . . . review must be taken pursuant to C.A.R. 21."). Once the district court enters permanent orders, the temporary parenting time order is no longer appealable. *See Salby*, 126 P.3d at 295.

¶ 18    The record shows that father did not seek C.A.R. 21 relief. Accordingly, he cannot now appeal the temporary parenting time

order. Because the entry of the permanent orders mooted any errors in the district court's temporary parenting time order, any opinion concerning that order would be advisory and, therefore, improper. *See* § 14-10-108(5)(c); *Salby*, 126 P.3d at 301 (providing that an issue is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy); *Stor-N-Lock Partners #15, LLC v. City of Thornton*, 2018 COA 65, ¶ 38, 488 P.3d 352, 359 (Appellate courts avoid issuing advisory opinions that "would have no practical effect on an existing controversy."). We therefore decline to consider father's appellate arguments regarding the temporary parenting time order and dismiss this part of the appeal.

¶ 19     To the extent that father argues the district court erred by continuing his parenting time restriction at the permanent orders hearing without making findings, we are not persuaded. *See* § 14-10-129(1)(b)(I) ("[I]n any order . . . continuing a parenting time restriction, the [district] court shall enumerate the specific factual findings supporting the restriction."); *In re Marriage of Thorburn*, 2022 COA 80, ¶ 27, 519 P.3d 736, 741. In the permanent orders, the court cited the expert's testimony that father's parenting time

was going well, but it also found that orders were "necessary for the emotional protection of the children in this high conflict matter." Relying on the expert's credible testimony, the court adopted the expert's recommendation to transition to supervised monitored parenting time. *See Thorburn*, ¶ 49, 519 P.3d at 744 (stating that it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom). And we must presume that the missing transcripts, including the transcript reflecting the expert testimony that the court credited, support the court's findings and determination. *See Beatty*, ¶ 15, 279 P.3d at 1229; *Dean*, ¶ 13, 413 P.3d at 250.

### C.    Decision-Making Responsibility

¶ 20    Father contends that the district court did not make the required findings when granting mother most, if not all, decision-making responsibilities. We disagree.

¶ 21    When a party has committed domestic violence, it is not in the children's best interests to allocate joint decision-making responsibility over the abused party's objection unless the district court finds credible evidence of the parties' ability "to make

11

decisions cooperatively in the best interest of the child[ren]" and "in a manner that is safe for the abused party and the child[ren]." § 14-10-124(1.5)(b), (4)(a)(II)(A), C.R.S. 2025.

¶ 22 The district court found that mother was the victim of father's domestic violence. The court indicated that the parties were in "high conflict," which necessitated an order requiring no face-to-face contact and that all parenting time exchanges occur through a third party. The court specifically found that the children were still concerned about the parties' interaction and that they would benefit from family therapy to help them navigate the parental conflict.

¶ 23 So contrary to father's contention, the district court made sufficient findings, and we can understand the basis of its decision. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9, 446 P.3d 968, 970 ("The district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order."); *In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998) ("Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised."). Given the court's findings of domestic violence and

ongoing high conflict, its allocation of decision-making responsibilities was not an abuse of discretion. *See* § 14-10-124(1.5)(b), (4)(a)(II)(A); *Morgan*, ¶ 23, 428 P.3d at 554.

## IV. Property Division

### A. Standard of Review

¶ 24    A district court has broad discretion to equitably divide a marital estate based on the particular facts and circumstances of the case, and we will not disturb its decision absent an abuse of that discretion. *Collins*, ¶ 19, 544 P.3d at 1267; *see* § 14-10-113(1), C.R.S. 2025; *see also In re Marriage of Smith*, 2024 COA 95, ¶ 67, 559 P.3d 662, 667 (weighing the section 14-10-113(1) factors is within the court's sound discretion). The property division need not be equal. *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 9, 561 P.3d 417, 421.

### B. Mother's Office Property

¶ 25    Father contends that the district court erred by classifying mother's office property as her separate property. *See* § 14-10-113(1) (stating that, before dividing the marital estate, the district court must first determine whether each asset is marital property, which is subject to division, or separate property, which is

not). He is mistaken. The court determined that the office property was marital and awarded it to mother.

¶ 26 Father also challenges the district court's finding that the office property had a value of $34,000, arguing that the $120,000 loan lacked an "enforceable promissory note" and that mother was not obligated to repay it. *See In re Marriage of Wright*, 2020 COA 11, ¶ 4, 459 P.3d 757, 759 (holding that, when dividing the marital estate, the district court must value each asset). But the court credited mother's testimony that the loan existed and remained outstanding. *See Thorburn*, ¶ 49, 519 P.3d at 744. And we must again presume that the record would support the court's valuation finding. *See Beatty*, ¶ 15, 279 P.3d at 1229.

¶ 27 Father maintains that the property division should be reversed because the district court omitted mother's rental income from the office property. But we do not address this argument because he does not support it with legal authority or meaningful legal analysis. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27, 486 P.3d 352, 357 (holding that an appellate court will not consider an argument not supported by meaningful legal analysis), *aff'd*, 2021 CO 12, 480 P.3d 676.

### C. Father's Financial Contributions and Improvements to the Marital Residence

¶ 28    Next, father contends that the district court erred by dividing the marital estate because it ignored his financial contributions from his family trust and the work he put into improving the marital residence during the marriage. *See* § 14-10-113(1)(a) (the district court considers a party's contribution to acquiring the marital property as a factor when dividing the marital estate).  The court, however, expressly found that both parties made substantial contributions to the marital estate, and we presume the court considered all the evidence admitted at the permanent orders hearing.  *See Collins*, ¶ 21, 544 P.3d at 1267.

### D. Omitted Property

¶ 29    We reject father's contention that the district court's property division omitted mother's interest in Fulton Investments LLC, the Porsche, and her retirement account.

¶ 30    The district court must allocate all marital assets and debts. *See In re Marriage of Page*, 70 P.3d 579, 582 (Colo. App. 2003).  "If property is omitted from permanent orders without explanation, the

property division cannot stand." *In re Marriage of Rodrick*, 176 P.3d 806, 815 (Colo. App. 2007).

¶ 31 The district court found that mother's 5% interest in Fulton Investments LLC, through which she held an interest in the Longmont property, was marital property; valued it at $1,300; and awarded it to her. The court also found that the Porsche was marital property, determined it had a negative value, and awarded it to mother. Finally, the court found that mother's retirement account was entirely marital, accepted its stipulated value of $13,797, and awarded it to her. Because the court classified, valued, and distributed each of those assets, we discern no error. *See* § 14-10-113(1); *Wright*, ¶ 4, 459 P.3d at 759; *Page*, 70 P.3d at 582.

¶ 32 We decline to address father's related assertion that the district court failed to divide mother's business — Goodvin Properties LLC — as well as her airline miles and points. Without the benefit of the hearing transcripts, we do not know whether or how the issues were raised at the hearing. *See* C.A.R. 28(a)(7)(A)-(B) (An appellant's opening brief must include, among other things, a statement on "whether the issue was preserved, and if preserved,

the precise location in the record where the issue was raised and where the court ruled" and "a clear and concise discussion of the grounds upon which the party relies in seeking a reversal[,] . . . with citations to the authorities and parts of the record on which the appellant relies."); *see also O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010) (declining to address an issue because the parties failed to direct the court to a place in the record where the issue was raised and ruled on). In any event, father does not develop this assertion. *See Zander*, ¶ 27, 486 P.3d at 357.

## V. Maintenance and Child Support

### A. Standard of Review

¶ 33 We review maintenance and child support orders for an abuse of discretion. *See In re Marriage of Medeiros*, 2023 COA 42M, ¶ 58, 534 P.3d 531, 542 (addressing maintenance); *see also Collins*, ¶ 37, 544 P.3d at 1269 (addressing child support).

### B. Father's Gross Income

¶ 34 Father contends that the district court erred by finding that he was voluntarily unemployed and by imputing to him a monthly income of $3,033 when determining maintenance and child support. We disagree.

17

¶ 35     When calculating maintenance and child support, income means a party's actual gross income if the party is fully employed. *See* § 14-10-114(8)(a)(II), C.R.S. 2025 (addressing maintenance); *see also* § 14-10-115(3)(c), C.R.S. 2025 (addressing child support). If, however, a party is voluntarily unemployed or voluntarily underemployed, maintenance and child support must be based on that party's potential income. *See* § 14-10-114(8)(c)(IV) (addressing maintenance); *see also* § 14-10-115(5)(b)(I) (addressing child support). "Potential income" is the amount a party could earn from a full-time job commensurate with the party's demonstrated earning ability. *Capparelli*, ¶ 35, 561 P.3d at 425 (quoting *People in Interest of A.R.D.*, 43 P.3d 632, 637 (Colo. App. 2001)).

¶ 36     Income imputation is a question of fact, and the district court's findings regarding potential income are entitled to deference if adequately supported by the record. *In re Marriage of Yates*, 148 P.3d 304, 311 (Colo. App. 2006).

¶ 37     In its temporary orders, the district court found that father was earning very little from his business buying and selling motorcycle parts. The court found that he was voluntarily

underemployed and imputed to him a minimum wage income of $2,499 per month.

¶ 38    More than a year later, at the permanent orders hearing, the district court found that father remained voluntarily underemployed so long as he continued in his motorcycle business, or voluntarily unemployed if he did not.  The court added that father had "done nothing to maximize his earning ability since temporary orders." *See People v. Martinez*, 70 P.3d 474, 480 (Colo. 2003) ("A [district] court may interpret a parent's lack of initiative in finding or keeping work as a voluntary refusal to fulfill a support obligation.").

¶ 39    The district court imputed to father a monthly income of $3,033 based on his knowledge of and sales experience with motorcycles.  Those findings are sufficient, and we presume the missing transcripts would support the court's income finding.  *See Gibbs*, ¶ 9, 446 P.3d at 970; *Beatty*, ¶ 15, 279 P.3d at 1229.

### C.    Mother's Gross Income

¶ 40    Father contends that, because mother did not comply with her C.R.C.P. 16.2 financial disclosure obligation, the district court lacked adequate evidence to determine her gross income and clearly erred by finding she earned $7,000 per month.  He also argues that

19

the court erred by excluding her rental income from the office property. But because father did not provide us with transcripts of the permanent orders hearing, we must presume they would support the court's income finding. *See Beatty*, ¶ 15, 279 P.3d at 1229.

¶ 41 Moreover, father insists that the district court failed to consider evidence that mother used her business accounts to pay personal expenses. The court, however, directly addressed that issue. It found mother's testimony regarding "payments for her car, truck, and some of [her] travel expenses and meals" not credible because those "areas [could] be easily manipulated to also pay personal expenses." After reviewing mother's Schedule C, the court found that she overstated her business expenses by a minimum of $2,400 and, as a result, added that amount to her gross income.

### D. Maintenance Term

¶ 42 Father contends that the district court failed to explain why it limited his maintenance award to three years despite the parties' fourteen-year marriage. We are not persuaded.

¶ 43 The district court found that father was currently unemployed but capable of working. The court determined that the guideline

20

maintenance term was inappropriate and instead set a three-year term, explaining that this period would give him sufficient time to secure suitable employment.

¶ 44 Although the duration of the marriage is one of the factors the district court must consider, it is not dispositive. *See* § 14-10-114(3)(c)(VII). The court must also evaluate the parties' employability obtainable through reasonable diligence and additional training or education. *See* § 14-10-114(3)(c)(V). Given the court's finding that three years was ample time for father to reenter the workforce and become self-supporting, we cannot say that the court's three-year term was manifestly arbitrary, unreasonable, or unfair. *See Medeiros*, ¶ 58, 534 P.3d at 542; *Collins*, ¶ 37, 544 P.3d at 1269.

## VI.    Disposition

¶ 45 The portion of the appeal challenging the temporary parenting time order is dismissed. In all other respects, the judgment is affirmed.

JUDGE WELLING and JUDGE TOW concur.