2017 CO 1

**IN RE the MARRIAGE OF Lisa Dawn GROMICKO, Petitioner,**

**and**

**Nickifor Nicholas Gromicko, Respondent.**

**Supreme Court Case No. 16SA199**

Supreme Court of Colorado.

January 9, 2017

Attorneys for Petitioner International Association of Certified Home Inspectors: Inman Flynn Biesterfeld & Brentlinger, P.C., Frank Lopez, Denver, Colorado

Attorneys for Respondent Lisa Dawn Gromicko: Michael E. Miner Boulder, Colorado Gill & Ledbetter, LLP, Anne Whalen Gill, Castle Rock, Colorado

No appearance by or on behalf of Nickifor Nicholas Gromicko.

**Rule Made Absolute**

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 In this original proceeding, we consider whether the Boulder County District Court erred in ordering petitioner International Association of Certified Home Inspectors ("InterNACHI") to produce a wide range of business records that may relate to a pending dissolution of marriage proceeding between respondent Lisa Dawn Gromicko ("Wife") and Nickifor Nicholas Gromicko ("Husband"). In the underlying dissolution proceeding, the district court granted broad discovery from Husband's employer, non-party InterNACHI, based in large part on Wife's allegation that InterNACHI might be Husband's alter ego and thus might constitute marital property subject to equitable division. InterNACHI petitioned this court for review pursuant to C.A.R. 21, and we issued a rule to show cause why the district court's discovery orders should not be vacated. We now make the rule absolute.

¶2 As an initial matter, we reject InterNACHI's argument that Wife was required to plead a veil-piercing claim in her petition for dissolution of marriage. We perceive no such requirement in the applicable statutes, and we may not add one.

¶3 We further conclude, however, that when InterNACHI objected to the scope of Wife's subpoena, the district court did not take the active role in managing discovery that DCP Midstream, LP v. Anadarko Petroleum Corp., 2013 CO 36, 303 P.3d 1187, requires. Specifically, although InterNACHI timely objected to the scope of discovery sought from it, the district court made no findings about the appropriate scope of discovery in light of the reasonable needs of the case, nor did it make any attempt to tailor discovery to those needs. Instead, the court granted Wife the broad range of discovery to which she might be entitled had she actually proved that InterNACHI was, in fact, Husband's alter ego, a fact that Wife had then (and has to date) merely alleged.

¶4 Because we conclude that the district court abused its discretion in so ruling, we vacate the portion of the court's order compelling production of InterNACHI's business records on an alter ego theory, and we remand this case with instructions that the court reconsider InterNACHI's motion to quash pursuant to the standards set forth in this opinion.

### I. Facts and Procedural History

¶5 In September 2015, Wife filed a petition for dissolution of marriage. The petition named Husband as the respondent and requested, as pertinent here, spousal maintenance and an equitable division of the marital assets and debts.

¶6 In order to evaluate Husband's income and assets, Wife sought information from Husband's employer, InterNACHI. Founded by Husband in 2004, InterNACHI is a Colorado nonprofit corporation with tax-exempt status as a trade association under section 501(c)(6) of the Internal Revenue Code. Husband serves on InterNACHI's four-member board of directors, and Wife alleges that Husband is currently employed as InterNACHI's Chief Operating Officer.

¶7 Although Husband initially indicated that he would not object to InterNACHI's making certain records available to Wife, he subsequently refused to produce them, contending that he was merely an employee of InterNACHI and had no authority to provide its records. As a result of Husband's apparent change of position, Wife requested a status conference to address the outstanding discovery issues.

¶8 The court set a status conference, and the day before the conference, Husband's counsel, who also served as InterNACHI's general counsel, filed a brief on behalf of InterNACHI regarding access to that entity's records. In this brief, counsel argued that (1) the only InterNACHI records relevant to the dissolution proceeding were those reflecting Husband's compensation and expense reimbursements; (2) the court could not consider InterNACHI as a marital asset because Wife had not alleged in her dissolution petition grounds to pierce InterNACHI's corporate veil; and (3) if InterNACHI would not voluntarily produce the pertinent documents, then the court should authorize Wife to serve a subpoena duces tecum on InterNACHI for those records.

¶9 The status conference proceeded as scheduled, but the district court declined to rule on the foregoing discovery issues. The court, however, continued the permanent orders hearing based on the unresolved discovery disputes and the complexity of the case.

¶10 Thereafter, on March 31, 2016, Wife served a subpoena duces tecum on InterNACHI. In this subpoena, Wife sought to discover all matters concerning (1) Husband's employment and compensation; (2) the employment by InterNACHI of any person related to Husband; (3) InterNACHI's bookkeeping, accounting, and tax return or Form 990 preparation; and (4) InterNACHI's conflict-of-interest policy.

¶11 InterNACHI moved to quash this subpoena, arguing, as pertinent here, that many of the requested documents were privileged, confidential, and irrelevant to the dissolution proceeding. InterNACHI also renewed its assertion that Wife's dissolution petition did not allege any basis, including fraud, on which to claim that InterNACHI was Husband's alter ego and therefore a marital asset.

¶12 Wife responded that the discovery requested in her subpoena was relevant to both spousal maintenance and the division of marital property. She argued that she was "clearly entitled" to discovery regarding Husband's "true income," including any distributions that he received from InterNACHI in addition to his salary and expense reimbursements, particularly given that Husband had allegedly told Wife that he had received such distributions. Wife further argued that because the court could classify InterNACHI as a marital asset if it found sufficient evidence to pierce the corporate veil, she was entitled to discovery to try to establish that InterNACHI was, in fact, Husband's alter ego. In support of this assertion, Wife alleged fourteen facts that she claimed showed that InterNACHI was Husband's alter ego.

¶13 The district court denied InterNACHI's motion to quash. In so ruling, the court rejected InterNACHI's argument that Wife had failed to plead fraud, concluding that such an allegation was unnecessary. In addition, the court noted that it could consider InterNACHI to be "property" for purposes of the equitable division of marital assets based on a finding that InterNACHI was Husband's alter ego. The court thus concluded "that discovery may be propounded under the 'alter ego' theory, subject to a protective order." In so ruling, however, the court provided no analysis and made no findings regarding InterNACHI's scope-of-discovery objections.

¶14 InterNACHI then filed a motion pursuant to C.R.C.P. 60(a), seeking a ruling on the confidentiality and privilege claims that it had raised in its motion to quash. Wife opposed this motion, and the district court ultimately denied it, reaffirming its prior order. Specifically, the court observed that (1) "the information and records sought by [Wife] are relevant to the issue[s] of whether InterNACHI is [Husband's] alter ego ... and to [Husband's] true income" and (2) Wife "has made sufficient assertions that the information sought may lead to such evidence."

¶15 InterNACHI then petitioned this court for review under C.A.R. 21, and we issued a rule to show cause why the district court's discovery orders should not be vacated.

## II. Original Jurisdiction and Standard of Review

■ ¶16 Exercise of our original jurisdiction under C.A.R. 21 is within our sole discretion. Fognani v. Young, 115 P.3d 1268, 1271 (Colo. 2005). Although discovery orders are generally interlocutory in nature and thus are reviewable only on appeal, this court has exercised its original jurisdiction "to review whether a trial court abused its discretion in circumstances where a remedy on appeal would be inadequate." Gateway Logistics, Inc. v. Smay, 2013 CO 25, ¶ 11, 302 P.3d 235, 238 (quoting Weil v. Dillon Cos., 109 P.3d 127, 129 (Colo. 2005)).

¶17 Here, the district court ordered Inter-NACHI to produce a wide range of business records that InterNACHI claims are confidential and irrelevant to the underlying dissolution proceeding. Damage to InterNACHI from the erroneous production of such records could not be cured by appeal "because the damage would occur upon disclosure to [Wife] 'regardless of the ultimate outcome of any appeal from a final judgment.'" Id. at ¶ 12, 302 P.3d at 239 (quoting Johnson v. Trujillo, 977 P.2d 152, 154 (Colo. 1999)). We therefore conclude that the exercise of our original jurisdiction is appropriate in this case.

■ ¶18 We review a district court's discovery orders for an abuse of discretion. Id. at ¶ 13, 302 P.3d at 239. A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. Id.

## III. Analysis

¶19 InterNACHI contends that the district court abused its discretion in refusing to quash or modify Wife's subpoena because (1) Wife was required to, but did not, plead in her dissolution petition a claim for piercing InterNACHI's corporate veil and (2) certain of Wife's discovery requests were irrelevant to her veil-piercing claim and thus were out-side the scope of discovery permitted by C.R.C.P. 26. We address these issues in turn.

### A. Pleading Requirements

[4] ¶20 Dissolution of marriage in Colorado is governed by Colorado's Uniform Dissolution of Marriage Act ("the Act"), §§ 14–10–101 to –133, C.R.S. (2016). The Act establishes a no-fault system of divorce and recognizes the "irretrievable breakdown of the marriage relationship" as the sole basis for dissolving a marriage. § 14–10–102(2)(c); see also Estate of Burford v. Burford, 935 P.2d 943, 952 (Colo. 1997) (noting that the adoption of the Act instituted "no-fault" divorce, requiring only that the parties demonstrate the irretrievable breakdown of the marriage to obtain a divorce).

¶21 Proceedings under the Act are commenced by the filing of a petition. See §§ 14–10–105(3), 14–10–107(1). The petition must allege that the marriage is irretrievably broken, and it must set forth:

(a) The residence of each party and the length of residence in this state;

(b) The date and place of the marriage;

(c) The date on which the parties separated;

(d) The names, ages, and addresses of any living children of the marriage and whether the wife is pregnant;

(e) Any arrangements as to the allocation of parental responsibilities with respect to the children of the marriage and support of the children and the maintenance of a spouse;

(f) The relief sought; and

(g) A written acknowledgment by the petitioner and the co-petitioner, if any, that he or she has received a copy of, has read, and understands the terms of the automatic temporary injunction required by paragraph (b) of subsection (4) of this section.

§ 14–10–107(2).

¶22 We perceive nothing in this statute—and InterNACHI cites no applicable authority—requiring that a dissolution petitioner who seeks to pierce the corporate veil of an entity related to the respondent must set forth in the petition a veil-piercing claim in accordance with applicable pleading stan-

dards. To the contrary, in arguing for such a pleading requirement, InterNACHI confuses pleading standards with standards governing discovery matters. These are different standards, however, and the issue that we confront today falls squarely in the latter category. For this reason alone, we reject InterNACHI's call for us to impose new pleading standards on petitioners in dissolution proceedings.

¶23 In addition, requiring a petitioner in a dissolution proceeding such as this to plead in the dissolution petition the elements of a veil-piercing claim would add to the statutorily mandated elements quoted above, and we will not read into a statute language that is not there. See Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp., 246 P.3d 948, 954 (Colo. 2011).

¶24 Similarly, requiring a petitioner in a dissolution proceeding to plead a veil-piercing claim in the dissolution petition would potentially require the joinder of third parties at the outset of the proceeding. Such a procedure seems inconsistent with (1) the Act's repeated focus on the parties to the marriage; (2) the required allegations of the dissolution petition, which concern only those parties, see § 14–10–107(2); and (3) the underlying purposes of the Act, which include the goal of promoting "the amicable settlement of disputes that have arisen between the parties to a marriage." § 14–10–102(2)(a) (emphasis added); see also C.R.C.P. 16.2(b) (noting that the Rule governing procedures to be employed in domestic relations matters is intended "to provide the parties with a just, timely and cost effective process").

¶25 Accordingly, we conclude that Wife was not required to plead in her dissolution petition a claim seeking to pierce InterNACHI's corporate veil.

### B. Discovery Standards

¶26 Our determination that Wife was not required to plead a veil-piercing claim in her dissolution petition does not end our inquiry. As noted above, this case presents a live discovery dispute. Accordingly, we still must determine whether the district court applied the appropriate standard in assessing InterNACHI's objection to the requested discovery. We conclude that it did not.

¶27 Discovery in a dissolution action is governed by C.R.C.P. 16.2, which sets forth special case management and disclosure requirements for all domestic relations cases. C.R.C.P. 16.2(a) provides that "[f]amily members stand in a special relationship to one another and to the court system." In the interest of reducing "the negative impact of adversarial litigation wherever possible," the Rule contemplates "management and facilitation of the case by the court, with the disclosure requirements, discovery and hearings tailored to the needs of the case." Id. Toward that end, C.R.C.P. 16.2(b) requires the court to provide "active case management from filing to resolution or hearing on all pending issues," with the intent of the Rule being "to provide the parties with a just, timely and cost effective process."[1]

¶28 C.R.C.P. 16.2(f) then sets forth the types of discovery allowable under the Rule. As pertinent here, C.R.C.P. 16.2(f)(2) allows a party to take the deposition of a non-party on oral or written examination for the purpose of obtaining or authenticating documents not accessible to the requesting party. In addition, C.R.C.P. 16.2(f)(4) requires the court to grant "all reasonable requests for additional discovery for good cause as defined in C.R.C.P. 26(b)(2)(F)." And C.R.C.P. 16.2(f)(4) provides that unless otherwise governed by C.R.C.P. 16.2, additional discovery shall be governed by C.R.C.P. 26 through 37 and C.R.C.P. 121 section 1–12.

¶29 C.R.C.P. 26(b)(1), in turn, permits a party to obtain discovery regarding:

> any matter, not privileged, that is relevant to the claim or defense of any party and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to rele-

---

1. C.R.C.P. 16.2(e)(1), in turn, provides that parties to domestic relations cases owe one another and the court "a duty of full and honest disclosure of all facts that materially affect their rights and interests and those of the children involved in the case." Nothing in this opinion is intended to alter those obligations.

vant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The information sought under this Rule need not be admissible in evidence to be discoverable. Id.

¶30 This is not to say, however, that merely alleging a basis for discovery entitles a party to any potentially relevant document. Rather, as we observed in DCP Midstream, ¶ 34, 303 P.3d at 1197, district courts must take an active role in managing discovery when, as here, a person or entity from whom discovery is sought objects to the scope of that discovery. In such a case, the district court must "determine the appropriate scope of discovery in light of the reasonable needs of the case and tailor discovery to those needs." Id. In making such a determination, the court should, at a minimum, consider the cost-benefit and proportionality factors set forth in C.R.C.P. 26(b)(2)(F). Id. at ¶ 35, 303 P.3d at 1197. These factors include whether the proposed discovery is unreasonably cumulative or duplicative, whether it is outside the scope permitted by C.R.C.P. 26(b)(1), and whether, given the number of parties and their alignment with respect to the underlying claims and defenses, the proposed discovery is reasonable. See C.R.C.P. 26(b)(2)(F).[2]

¶31 Although we have not previously addressed whether the holding of DCP Midstream extends to a scope objection raised in a dissolution proceeding, for two reasons, we conclude that it does.

¶32 First, as noted above, C.R.C.P. 16.2 imposes the same duty of active case management on courts hearing domestic relations matters that C.R.C.P. 26 imposes on district courts in other civil cases. See C.R.C.P. 16.2(b); C.R.C.P. 26(b)(1); DCP Midstream, ¶ 28, 303 P.3d at 1194; see also In re Marriage of de Koning, 2016 CO 2, ¶ 25, 364 P.3d 494, 498 ("While the trial court retains discretion to grant discovery and tailor it to the particular needs of the case, Rule 16.2 indicates a preference for limiting discovery in time and in scope in order to further the efficient resolution of domestic relations cases.") (citations omitted).

¶33 Second, C.R.C.P. 16.2(f)(4) authorizes courts in dissolution cases to allow additional discovery in accordance with the same cost-benefit and proportionality factors set forth in C.R.C.P. 26(b)(2)(F), which we construed in DCP Midstream, ¶ 28, 303 P.3d at 1194.

¶34 Given the foregoing interrelationship between C.R.C.P. 16.2 and C.R.C.P. 26(b), we perceive no reason not to apply the reasoning of DCP Midstream in the present case.

¶35 Applying that reasoning here, we conclude that the district court should initially have granted Wife only such discovery as would reasonably have been necessary to allow her to attempt to establish the existence of the alter ego relationship that she claimed. In deciding the proper scope of such discovery, the court should have considered the factors set forth in Leonard v. McMorris, 63 P.3d 323, 330 (Colo. 2003), to guide courts in making alter ego determinations. These factors include:

(1) whether the corporation is operated as a separate entity, (2) commingling of funds and other assets, (3) failure to maintain adequate corporate records, (4) the nature of the corporation's ownership and control, (5) absence of corporate assets and undercapitalization, (6) use of the corporation as a mere shell, (7) disregard of legal formalities, and (8) diversion of the corporation's funds or assets to noncorporate uses.

Id. (quoting Newport Steel Corp. v. Thompson, 757 F.Supp. 1152, 1157 (D. Colo. 1990)).

¶36 In not tailoring discovery in this manner, and in instead allowing Wife to discover virtually any document to which she might arguably be entitled were she ultimately able to prove her veil-piercing claim, we conclude that the district court abused its discretion.

¶37 This is not to say that Wife may not subsequently be entitled to broader discovery

---

2. Although C.R.C.P. 26 was amended and restructured in 2015, those changes did not alter the substance of the provisions that formed the basis of our analysis in DCP Midstream. Accordingly, our analysis in DCP Midstream continues to apply after the 2015 amendments to C.R.C.P. 26.

from InterNACHI than she is entitled to at this point, and we express no opinion on that issue. If the information that Wife receives pursuant to a properly tailored discovery request shows no apparent abuse of InterNACHI's corporate form, then the principles of active case management articulated in DCP Midstream would likely preclude further discovery regarding a veil-piercing allegation because in that scenario, additional discovery would be of negligible "importance ... in resolving the issue[ ]" of alter ego liability, C.R.C.P. 26(b)(1), and any additional discovery requests premised on such liability would be unreasonable and cumulative, see C.R.C.P. 26(b)(2)(F)(I), (IV); see also Breeden v. Breeden, 678 N.E.2d 423, 426 (Ind. Ct. App. 1997) (concluding that a second subpoena for certain of a non-party corporation's business records was properly quashed when a husband sought information to establish that his wife was an owner of the corporation but the information obtained in response to his first subpoena established that she was an independent contractor).

¶38 Conversely, if Wife discovers information tending to establish that InterNACHI was Husband's alter ego and thus seeks additional discovery from InterNACHI, then the court, applying the active case management principles described above, could consider the relationship between Husband and Inter-NACHI, as well as any remaining privilege and confidentiality concerns that InterNACHI may still have, in determining the proper scope of any further discovery to be ordered.

¶39 Proceeding in this fashion properly balances Wife's right to pursue her alter ego allegations against InterNACHI's privilege and confidentiality concerns and its right to be free from overbroad discovery requests, particularly given its status as a non-party in

this dissolution proceeding. See Gateway Logistics, ¶¶ 15–17, 302 P.3d at 240–41 (addressing the balancing test to be applied when a party or non-party from whom discovery is sought raises confidentiality and privacy concerns).

¶40 Accordingly, we vacate that portion of the district court's order compelling the production of InterNACHI's records pertinent solely to Wife's veil-piercing allegations, and we remand for further proceedings.[3]

¶41 On remand, the court should assess the proper scope of discovery to which Wife should be entitled given the reasonable needs of this case, and it should grant Wife only such discovery as would permit her to attempt to establish, by reference to the factors set forth in Leonard, 63 P.3d at 330, that InterNACHI is Husband's alter ego. Once Wife has obtained such discovery, she may seek further discovery as the needs of the case may dictate, given the then-existing evidence supporting or refuting a veil-piercing claim.

## IV. Additional Issues

¶42 In light of our foregoing determination, we need not reach any of the other issues raised by InterNACHI in its petition.

## V. Conclusion

¶43 For these reasons, we make the rule absolute and return this case to the district court for further proceedings consistent with this opinion.

---

**3.** InterNACHI does not dispute Wife's entitlement to records regarding the nature or extent of payments made by it to Husband, and those records are not at issue here.