The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 3, 2019

## 2019COA104

**No. 18CA0250, *In re Marriage of Gibbs* — Family Law — Post-
dissolution — Modification and Termination of Provisions for
Maintenance, Support, and Property Disposition — Imputed
Income**

This opinion answers the unresolved question of whether a
district court can, for the purpose of calculating maintenance,
impute to a party rental income from that party's primary residence
when the primary residence has never been used as a rental
property.  A division of the court of appeals concludes that a district
court cannot impute rental income to a party when that party has
never used the residence as an income-producing asset.

COLORADO COURT OF APPEALS                                      2019COA104

Court of Appeals No. 18CA0250
Larimer County District Court No. 12DR408
Honorable Devin R. Odell, Judge

In re the Marriage of

Carl Joseph Gibbs,

Appellant,

and

Joellen Elizabeth Gibbs,

Appellee.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE LIPINSKY
J. Jones and Martinez*, JJ., concur

Announced July 3, 2019

Thomas & Associates Law Firm LLC, Joseph G. Williams, Greenwood Village,
Colorado, for Appellant

Alison Ruttenberg, Louisville, Colorado; Vigil Law Offices, P.C., Frank G. Vigil,
Lakewood, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Three years after the district court entered permanent orders in his dissolution of marriage case, husband, Carl Joseph Gibbs, sought to modify or terminate his maintenance obligation to wife, Joellen Elizabeth Gibbs, under section 14-10-122(1)(a), C.R.S. 2018. Husband argued that his alleged loss of income resulting from a shoulder injury he incurred three years following the entry of the permanent orders constituted a substantial and continuing change in his circumstances that warranted a decrease in his maintenance payments.

¶ 2    The district court denied husband's motion based on its calculation of husband's monthly income, including imputed rental income from husband's primary residence.

¶ 3    We affirm the portion of the decision addressing husband's self-employment income and reverse the portion imputing rental income to him because husband never used the residence as an income-producing asset. We remand to redetermine husband's maintenance obligation without considering imputed rental income.

## I.    Background

¶ 4    The parties' marriage ended in 2013. In the permanent orders, the district court awarded wife $1,850 in monthly

maintenance until the death of either party, the remarriage or civil union of wife, or further court order.

¶ 5      In September 2016, husband moved to modify or terminate his maintenance obligation. He alleged that, as a result of a severe shoulder injury, he was no longer able to perform labor-oriented work. He further alleged that he had been diagnosed with stenosis, which would require surgery and affect his ability to work for the rest of his life.

¶ 6      Following a hearing at which husband, wife, and a physician testified, the court found that husband had not shown a substantial and continuing change in his circumstances and, therefore, denied husband's motion.

## II.    Husband's Income

¶ 7      Husband contends that the district court abused its discretion in determining that his income was $6,500 per month for purposes of calculating maintenance.

## A.    Standard of Review

¶ 8      We review a district court's order continuing or modifying maintenance for an abuse of discretion. *In re Marriage of Kann,* 2017 COA 94, ¶ 75, ___ P.3d ___, ___. A district court abuses its

discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *In re Marriage of Gromicko*, 2017 CO 1, ¶ 18, 387 P.3d 58, 61.

¶ 9     We defer to the district court's factual findings unless they are clearly erroneous. *In re Marriage of Connerton*, 260 P.3d 62, 66 (Colo. App. 2010). The district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order. *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008).

## B.     Self-Employment Income

¶ 10    Husband argues that the district court miscalculated his self-employment income because it did not accurately calculate the ordinary and necessary business expenses that needed to be deducted from his gross receipts, as required by section 14-10-114(8)(c)(III)(A), C.R.S. 2018. We disagree.

¶ 11    In applying the maintenance guidelines, an individual's gross income from self-employment is calculated by deducting from gross receipts the ordinary and necessary expenses required to produce income. *Id.* Ordinary and necessary expenses do not include business expenses that the district court finds are "inappropriate

for determining gross income." § 14-10-114(8)(c)(III)(B).  A self-employed party's gross income includes expense reimbursements or in-kind payments received in the course of self-employment if they are significant and reduce personal living expenses. § 14-10-114(8)(c)(I)(X).

¶ 12     The record reflects that, when the district court entered the permanent orders, husband performed the manual labor of a framer for his own construction company.  As a result of husband's shoulder injury and pain from stenosis, he transitioned to a supervisory position at his girlfriend's construction company.

¶ 13     The court found that husband earned a $5,000 monthly salary as a supervisor.  The court acknowledged that husband was required to use a portion of his salary to pay for certain business expenses, including a cell phone, general liability insurance, and auto insurance.  However, the court found that these business expenses were offset by his ability to use a company vehicle and the cell phone for personal purposes.

¶ 14     The record supports the district court's finding that husband's business expenses were offset by the value of the vehicle and cell phone.  Husband testified that his business expenses for his cell

phone, general liability insurance, auto insurance, and loan payment totaled $1,057 per month. He also testified that he was provided the vehicle at no cost to himself and was allowed to use the vehicle for personal use. Husband estimated that the monthly loan payment on his vehicle was around $800 and that he spent around $300 per month in fuel. Husband further said that his construction company paid his cell phone bills. His monthly cell phone bill was $123.

¶ 15    In finding that husband's business expenses were offset by the in-kind payments he received from his girlfriend's construction company, the court essentially added those payments to his salary, *see* § 14-10-114(8)(c)(I)(X); *see also In re Marriage of Long*, 921 P.2d 67, 69 (Colo. App. 1996) (noting that in-kind payments might include a company car, free housing, or reimbursed meals), and then deducted his business expenses from his salary, *see* § 14-10-114(8)(c)(III)(A). Because his monthly business expenses ($1,057) were nearly the same as the monthly in-kind payments for the vehicle, fuel, and cell phone ($1,223), we discern no abuse of discretion in the district court's calculation of husband's self-employment income.

## C. Imputed Rental Income

¶ 16 Husband argues that the district court erred in imputing $1,500 per month in rental income to him. We agree.

¶ 17 The record reflects that husband continued living in the marital residence following the dissolution of the parties' marriage. His monthly mortgage payment on the five-bedroom, 2,500-square-foot home was $2,552 at the time of the modification hearing. Husband lived in the home with his girlfriend and her three children. They lived there together as a family. Husband testified that he paid the mortgage and, although his girlfriend did not pay rent, she paid for the utilities and groceries.

¶ 18 The district court found that this arrangement was not a fair market exchange because husband's portion of the utilities and groceries was only a small fraction of these costs. In addition, the district court imputed to husband rental income from the house, noting that husband "owns a large house — the former marital residence — that he could use to generate rental income. . . . [T]he property . . . is much larger than he needs for himself."

¶ 19 The district court "estimate[d] that fair rental value would be at least $1,500 per month for a house of that size." It therefore

concluded that husband was "essentially receiving at least $1,500 in income that he is gifting to [his girlfriend] and her children." The district court found that "[t]he fact that [husband] chooses to forgo this income from an asset should not be used to penalize [wife]." The district court added the $1,500 in imputed rental income to husband's $5,000 monthly salary for a total income of $6,500 per month.

¶ 20    For purposes of calculating maintenance, potential income is properly imputed to a party who is voluntarily unemployed or underemployed. *See* § 14-10-114(8)(c)(IV); *see also People v. Martinez*, 70 P.3d 474, 476-81 (Colo. 2003) (discussing imputing income to an unemployed or underemployed parent for purposes of calculating child support). Unrealized income from an investment asset that earns interest or distributes dividends is also properly imputed to a party. *See In re Marriage of Bregar*, 952 P.2d 783, 786-87 (Colo. App. 1997) (interest imputed on portion of capital gain from stock sale used to reduce margin account debt); *In re Marriage of Laughlin*, 932 P.2d 858, 861-62 (Colo. App. 1997) (interest imputed on portion of capital gain from sale of business used to construct addition to home and to pay mortgages); *In re*

*Marriage of Tessmer*, 903 P.2d 1194, 1196 (Colo. App. 1995) (interest and dividends on a retirement account were income, although not withdrawn and subject to penalty if withdrawn); *In re Marriage of Armstrong*, 831 P.2d 501, 503-04 (Colo. App. 1992) (income earned on portion of inheritance imputed to the father).

¶ 21    But no Colorado statute addresses whether potential rental income can be imputed to a party for purposes of calculating maintenance.  Nor does any Colorado statute address whether potential rental income from a party's primary residence that has never before earned rental income can be imputed to that party for purposes of calculating maintenance.  We answer this second, and more narrow, question "no."

¶ 22    No evidence in the record shows that the residence ever produced income.  There is also no evidence indicating that husband was acting in bad faith by staying in the residence to inflate his monthly expenses and avoid paying maintenance to wife.  By imputing rental income to husband, the court effectively recharacterized husband's home from a primary residence to an income-producing rental property.  This was, in our view, an abuse of discretion.

¶ 23     In *In re Marriage of Mugge*, 66 P.3d 207 (Colo. App. 2003), a division of this court considered a parent's unrealized income in the form of an undistributed retirement account. *Mugge* held that it was improper to "consider unrealized income for child support purposes solely because a parent could liquidate an asset or change its character into an asset capable of producing income." *Id.* at 212. Like the father's undistributed retirement account in *Mugge*, husband's primary residence in this case would not generate income unless its character were changed. *Id.* Moreover, we are unaware of any case holding, in effect, that a party in a dissolution of marriage case may be compelled to relocate to a smaller residence or to rent a portion of his or her home.

¶ 24     For these reasons, we conclude that, where a party has not historically earned rental income from his or her primary residence, potential rental income from that asset cannot be imputed to the party for purposes of calculating maintenance. *See id.* at 213 (noting that several other statutory income categories expressly require payment to the recipient).

¶ 25    We therefore remand this case to the district court to redetermine maintenance without imputing to husband potential rental income from his primary residence.

### III.    Husband's Argument that He Is Not Underemployed

¶ 26    We next turn to husband's contention that the district court erred in finding him underemployed.

¶ 27    The district court found that husband "has chosen a position that is comfortable and familiar to him, but there is no evidence that he has attempted to find the highest paying position possible given his experience."  But the district court did not make findings regarding the amount of additional income husband could be earning.  Thus, the district court did not impute any income to husband on grounds of underemployment, and we need not address husband's argument on this point.

### IV.    Husband's Other Arguments

¶ 28    Because the district court must redetermine maintenance based on the parties' circumstances at the time of that hearing, we need not address husband's arguments that he has experienced a substantial decrease in his income warranting a modification of

maintenance and that he would be impoverished if the district court does not modify his maintenance obligation.

## V. Conclusion

¶ 29     We affirm the portion of the district court's order calculating husband's self-employment income, reverse the portion imputing rental income to husband, and remand the case for redetermination of maintenance, as provided herein.

JUDGE J. JONES and JUSTICE MARTINEZ concur.