24CA1254 Marriage of Ness 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1254
Douglas County District Court No. 22DR30184
Honorable Benjamin T. Figa, Judge

---

In re the Marriage of

Oscar Pablo Ness,

Appellee,

and

Hannah Jo Ness n/k/a Hannah Jo Culbertson,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Oscar Pablo Ness, Pro Se

Fourth Street Law LLC, Caroline C. Cooley, Christopher J. Linas, Castle Rock, Colorado, for Appellant

¶ 1    In this dissolution of marriage case between Hannah Jo Culbertson f/k/a Ness (mother) and Oscar Pablo Ness (father), mother appeals those portions of the permanent orders concerning property division, maintenance, and child support.  We affirm.

## I.    Background

¶ 2    Father petitioned to dissolve the parties' marriage in March 2022.  The parties had been married since September 2018 and have one minor child.

¶ 3    The district court held a hearing in January 2024 and, a few weeks later, entered permanent orders and dissolved the parties' marriage.  Mother appeals the permanent orders, claiming the district court erred by (1) accepting father's expert's valuation of the marital business over her expert's opinion; (2) correcting its calculation of mother's debt after its initial ruling; (3) deviating from the child support guidelines to reduce father's child support obligation to $0; and (4) denying mother's request for maintenance.

## II.    Mother Did Not Preserve Her Dissipation Argument as to the Marital Business

¶ 4    The parties jointly owned a business, Denver Wedding Rental Company, which was a marital asset.  Mother's expert testified that

1

the business should be valued at $554,000, while father's expert opined that its value was $152,000. The court found that, although mother's expert was credible, the expert's valuation was a year out of date. It therefore adopted father's expert's valuation and awarded the business to father.

¶ 5     On appeal, mother contends the court erred because it did not consider that the business's value decreased due to father's dissipation. Though the parties represent that the dissipation issue is properly before us, we disagree. *See In re Marriage of Hogsett*, 2018 COA 176, ¶ 32 n.3 (an appellate court is not bound by a party's concession regarding preservation), *aff'd sub nom. Hogsett v. Neale*, 2021 CO 1. Based on our independent review of the record, we conclude that mother did not sufficiently preserve her dissipation argument, and we therefore do not address it on the merits. *See People v. Tallent*, 2021 CO 68, ¶ 11 ("[A]n appellate court has an independent, affirmative duty to determine whether a claim is preserved . . . regardless of the positions taken by the parties.").

## A. Applicable Law

¶ 6    In a civil case, "issues not raised in or decided by a lower court will not be addressed for the first time on appeal." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18. Though no talismanic language is required to preserve an issue, *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004), "the party asserting the argument must present 'the sum and substance of the argument' to the district court." *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 (quoting *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50). In other words, to preserve an argument for appellate review, a party must raise it "to such a degree that the court has the opportunity to rule on it." *Madalena*, ¶ 50 (quoting *Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21); *see also In re Marriage of Aragon*, 2019 COA 76, ¶ 27.

¶ 7    When dividing a marital estate, the district court must disregard marital misconduct. § 14-10-113(1); *In re Marriage of Jorgenson*, 143 P.3d 1169, 1173 (Colo. App. 2006). But in extreme cases, the court may consider "economic fault," such as a spouse's dissipation of marital assets in contemplation of divorce. *In re Marriage of Hunt*, 909 P.2d 525, 542 (Colo. 1995); *In re Marriage of*

*Jorgenson*, 143 P.3d 1169, 1173 (Colo. App. 2006). That is, when allocating the marital estate, the court may consider one spouse's conduct in depleting the estate when that conduct is for an improper or illegitimate purpose. *In re Marriage of Smith*, 2024 COA 95, ¶ 75. "[I]f marital assets are dissipated by one of the parties, they must be valued as of the time when they existed." *In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996).

## B. Analysis

¶ 8 On appeal, mother asserts that the district court erred by using father's expert's valuation for the business because it did not account for father's "economic fault" of "driving [mother] from the business." In her opening brief, mother identifies two places in the record that she says support her contention that she preserved her dissipation argument: her testimony and that of her expert witness. Mother points out that she and her expert both testified that she did not want to be forced to absorb the decrease in the business's value after she stopped working for it. But neither mother nor her expert testified about husband's alleged economic fault or dissipation. Nor did she raise this argument in the joint trial

4

management certificate.[1]  We conclude that this testimony falls short of presenting the "sum and substance" of a dissipation claim — a fact intensive inquiry.  *Smith,* ¶ 76.

¶ 9      To prove dissipation, mother needed to establish that father took actions that depleted the value of the marital estate and that he engaged in those actions for an improper or illegitimate purpose, such as in contemplation of the dissolution.  *Id.* at ¶ 75.  Mother's testimony did not draw to the court's attention her appellate claim that father depleted the martial estate for an improper or illegitimate purpose.  While she may have complained about his conduct, she did not make the substantive legal argument required to alert the court that she was advancing an economic fault theory.  Instead, she only pointed to father's contemptuous behavior, which alone is insufficient to preserve her appellate dissipation argument.

¶ 10     Mother argues that the court failed to acknowledge or consider the reason *why* mother stopped working at the business.  This illustrates the reason for our jurisprudence on preservation — the court cannot be expected to make findings on issues of which it did

---

[1] The parties waived closing arguments.

not receive sufficient notice. *In re Marriage of Eisenhuth*, 976 P.2d 896, 901 (Colo. App. 1999) (court is required to consider the evidence presented to it; it does not act as a surrogate attorney).

¶ 11　We also do not agree, as mother appears to suggest, that the court's contempt finding necessarily apprised the court that dissipation was an issue months later, when it entered permanent orders. The court's inquiries for contempt and for economic fault are different; a contempt finding does not necessarily implicate economic fault. *See Smith*, ¶ 80. Though mother proved at the contempt hearing that father violated the automatic temporary injunction when he restricted her access to business accounts and other business resources, proof of dissipation requires more. Because economic fault can only be considered in extreme cases and is fact intensive, we cannot say that the earlier contempt findings are sufficient to preserve mother's dissipation claim on appeal.

¶ 12　For these reasons, we conclude mother did not present to the district court the "sum and substance" of a dissipation argument that would have given the district court an opportunity to rule on it. *See Gebert*, ¶ 25. Therefore, we do not address it.

### III. Mother's Marital Debt

¶ 13    Mother also contends that the district court erred when, following father's post-trial motion, it adjusted its finding regarding the amount of her indebtedness to her mother. We are not persuaded.

### A. Applicable Law

¶ 14    According to C.R.C.P. 59(a), a party may file a motion for post-trial relief, including an amendment of findings or amended judgment. The primary purpose of a C.R.C.P. 59(a) motion to amend is to provide the district court with an opportunity to correct any errors that it may have made. People in Interest of K.L-P., 148 P.3d 402, 403 (Colo. App. 2006). Under C.R.C.P. 59(a), the court should correct irregularities or errors "that may affect the fairness of the proceedings and should grant post-trial relief to address these issues." Koch v. Dist. Ct., 948 P.2d 4, 8 (Colo. 1997). This is particularly true in dissolution of marriage cases, given that permanent orders "have an enormous impact on the lives of the parties." Id. at 8-9.

## B.    Analysis

¶ 15    Mother testified at the permanent orders hearing that she had borrowed $125,000 from her mother during the dissolution proceedings.  In support of this testimony, she submitted an exhibit of several promissory notes that she said memorialized the loan. The district court allocated this indebtedness to mother.

¶ 16    Father then moved for post-trial relief pursuant to C.R.C.P. 59 and 60, asserting that the court had given excessive weight to mother's testimony regarding her indebtedness to her mother because the exhibit showed that she only owed her mother $91,833.10.  The court agreed, finding that the exhibit that wife presented to establish the amount she owed her mother "contain[ed] several inconsistencies that undermine its credibility." It noted that, in her reply to father's motion, mother attempted to fill in the gaps in her proof by providing supplemental evidence, but it declined to reopen the evidentiary portion of the proceedings to allow her to submit the additional evidence.  Based on the exhibit entered into evidence at the permanent orders hearing, the court made an amended finding that mother owed her mother $91,833.10.

¶ 17    On appeal, mother asserts that relief under father's motion was limited to that available under C.R.C.P. 59(d), which enumerates the grounds for granting a new trial and that none of the listed reasons in that subsection apply. However, father's motion did not specify under what subsection he sought relief. And although he cited C.R.C.P. 59(d), nothing in his motion limited his request for relief to that subsection alone, as mother suggests on appeal. Although the court also did not specify under what subsection it granted the relief, the recalculation of mother's debts based on the exhibit admitted at the permanent orders hearing falls squarely within C.R.C.P. 59(a)(3), which allows a party to move the court for an "[a]mendment of findings."

¶ 18    Mother argues that the district court inappropriately reweighed the evidence when it granted father's post-trial motion. But nothing in C.R.C.P. 59 prevents the court from reevaluating its findings when ruling on a post-trial motion using evidence presented at a hearing. Indeed, "[d]issolution cases, by their very nature, often present situations where the need for post-trial relief to clarify, modify, or to enter additional orders is necessary to

achieve fairness given the sometimes conflicting needs and lives of the parties." *Id.* at 9.

¶ 19 The district court reviewed the exhibit that mother claimed supported her testimony that she borrowed $125,000 from her mother. The court found that the exhibit did not support that figure. Instead, the exhibit supported a finding that mother owed her mother $91,833.10. Because the district court "should correct . . . errors that may affect the fairness of the proceedings" via post-trial relief, it did not err when it reduced the amount of mother's debt based on the exhibit admitted at the hearing. *Id.* at 8.

## IV. Deviation from Child Support Guidelines

¶ 20 Mother also asserts that the district court erred by declining to order child support both going forward and retroactively to the filing date of the petition. We are not persuaded.

### A. Applicable Law

¶ 21 There is a rebuttable presumption that the amount of child support awarded should correspond to the amount specified in the guidelines. *See* § 14-10-115(8)(e), C.R.S. 2025. The district court, however, has discretion to deviate from the guidelines if it

10

determines that their application would be "inequitable, unjust, or inappropriate." *In re Parental Responsibilities Concerning M.G.C.-G.*, 228 P.3d 271, 272 (Colo. App. 2010).

¶ 22    We review for an abuse of discretion the district court's decision whether to deviate from the guidelines. *See In re Marriage of Stress*, 939 P.2d 500, 502-03 (Colo. App. 1997). Under this standard, we reverse the district court's decision only if it was manifestly arbitrary, unreasonable, or unfair. *See Streu v. City of Colorado Springs*, 239 P.3d 1264, 1268 (Colo. 2010). We need not agree with the district court's decision; rather, the court's decision must not exceed the bounds of rationally available choices. *Id.*

### B.    Analysis

¶ 23    The district court noted that the recommended amount of child support to mother under the guidelines was $491.19 per month.[2] However, the court found it would be "inappropriate, inequitable, or unjust" to require father to pay child support in the recommended amount. The court said that, although it had

---

[2] The court initially calculated the guideline amount as $635.41 but revised this calculation after correcting its calculation of the overnight visits awarded to each parent.

11

allocated the marital estate equally, father also had substantial separate student loan debt and outstanding attorney fees. The court found that father had "very strained financial resources to meet his own needs and others." It then considered the "significant and substantial disparity in assets of the parties," including separate property in the form of mother's business, Culbertson, LLC, finding "that's approximately a half a million-dollar swing between mother's assets and father's debts."

¶ 24 Mother argues that the district court abused its discretion because it should not have considered father's "non-family support debts," such as student loans, credit cards, and attorney fees as a reason to deviate from the guidelines. She asserts that "non-family support debt" is not one of the enumerated grounds supporting an order for deviation set forth in section 14-10-115(8)(e). Although she acknowledges that the statute does not set forth an exclusive list of reasons deviation would be appropriate, she asserts that any reason the court deviates must "fall within a similar category" as the enumerated reasons of section 14-10-115(8)(e) and father's personal debt is not of that ilk.

¶ 25    First, we agree that the court inappropriately considered the amount of attorney fees father owed related to this proceeding as a factor when it deviated from the statutory child support guidelines. The proper mechanism to address any inequity arising from father's outstanding attorney fee obligation is through section 14-10-119, C.R.S. 2025, not by lowering his child support obligation.

¶ 26    Nonetheless, the court has the discretion to deviate from the guidelines when, as here, its reasons are based on "valid considerations." *In re Marriage of Andersen*, 895 P.2d 1161, 1164 (Colo. App. 1995). Mother asserts that father's outstanding personal debt (including his premarital student loan debt) is not a valid consideration because including it in the calculation of child support is contrary to public policy. In support, she points to certain lien and collection statutes that prioritize child support over other debts. That may be so, but we are not convinced that the court's consideration of father's premarital student loan debt and other personal debt was an abuse of discretion. As mother acknowledges, section 14-10-115(8)(e) provides a non-exclusive list of reasons why the court may deviate from the child support guidelines and expressly provides that the court may deviate "even

13

if a factor enumerated in this section does not exist." Mother's interpretation of subsection (8)(e) would require us to read restrictions into the statute that are not there. *See Springer v. City & Cnty. of Denver*, 13 P.3d 794, 804 (Colo. 2000) ("Where the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute.").

¶ 27 Moreover, section 14-10-115(2)(b)(IV) requires the court to consider "[t]he financial resources *and needs* of the noncustodial parent" when determining a child support amount. (Emphasis added). Thus, the court did not err when it considered father's needs, including his outstanding debts. We note that father incurred his largest single debt — his separate student loan debt — for education, the unpaid balance of that debt is substantial (approximately $236,000), and, unlike personal credit card debt, student loan debt is not dischargeable in bankruptcy. In sum, the district court considered father's actual ability to pay child support in light of his constrained finances and outstanding debt. Given father's significant separate debt, we conclude that, to the extent

the court considered father's attorney fees debt in support of its decision to deviate, that error was harmless.

¶ 28     Mother also asserts that that the court erred by denying her child support based on her separate ownership of Culbertson, LLC. Mother acknowledges that a court may consider one parent's ownership of a "substantial nonincome producing asset" when determining whether it should deviate from the guidelines.  *See* § 14-10-115(8)(e).  However, she asserts that the court's "degree" of deviation was arbitrary because it denied her any child support.

¶ 29     Contrary to mother's assertions, however, the district court did not deny child support solely based on mother's ownership of a nonincome producing asset.  Nor did the court's order require mother to deplete this asset to become entitled to child support, as she suggests.  Rather, the court considered mother's overall financial resources and noted that it had allocated her half of the marital estate, she had considerable nonmarital property, and she had the ability to work and set up a new business, while father had considerable separate debt.

¶ 30     Mother also asserts that the court made insufficient findings because it needed to decide how long it would take her to sell

Culbertson, LLC's property and the amount of income she could generate from such a sale. But such a specific finding was not required. The court considered that mother held a substantial nonincome producing asset as one of the factors for deviating from the child support guidelines, as the statute provides that it could do. *See In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998) ("Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised."). Thus, the court's findings are sufficient for this court to determine the basis of its ruling. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9 (a district court must make findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order).

¶ 31 Lastly, we do not agree that the district court failed to consider that father could pay retroactive child support out of his share of the marital estate rather than his future earnings. Mother had specifically testified that she wanted retroactive support to be "paid out of the proceeds" from sale of the marital home. The court rejected her request, stating that it had "accounted for what assets are in the parties' possession." We construe this finding as

16

recognizing that the parties' remaining assets and debts reflected the costs they each incurred to support the child during the pendency of the dissolution of marriage proceeding. Thus, the equal division of the marital estate accounted for their child-related expenses without the need for retroactive support. And nothing indicates the court believed that retroactive child support was otherwise appropriate. Rather, the court generally found that a child support order would be "inappropriate, inequitable, or unjust" based on the parties' relative financial situations.

## V.    Denial of Maintenance

¶ 32    Mother also asserts that the district court erred by declining to order father to pay retroactive maintenance. She does not appear to challenge the court's decision to deny prospective maintenance at permanent orders, except to argue that the court must reconsider it if we reverse the property division award. Given our disposition of that issue, there is no basis to reconsider prospective maintenance.

¶ 33    We also disagree with mother's claim that the district court erred when it denied her request for retroactive maintenance. Mother argues that the court erred by considering the $5,000 per month she received from father during the pendency of the

dissolution action and following the contempt hearing. We disagree. While the court may have mischaracterized those payments as temporary support (the record reflects the payments were a contempt sanction for keeping mother from the parties' business), it nevertheless properly considered these funds as available to mother for her monthly living expenses. *See* § 14-10-114(3)(c)(I) (court shall consider all relevant factors including income from any source). And though mother complains on appeal that the court erred because it did not consider whether mother was entitled to retroactive maintenance *independent* of prospective maintenance, she did not present any evidence that she was unable to meet her reasonable needs during the pendency of the proceeding — for example, evidence of her reasonable needs, her income from all sources, and the age of the minor child after mother moved out of state and before entry of permanent orders. *See In re Marriage of Krejci*, 2013 COA 6, ¶ 23 (parties must present relevant evidence to the court, and their failure to do so does not provide grounds for reversal); *Eisenhuth*, 973 P.2d at 901.

## VI. Costs

¶ 34    Because we reject all of mother's claims, we deny her request for appellate costs.  *See* C.A.R. 39(a)(2).

## VII. Disposition

¶ 35    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE LUM concur.