25CA1196 Parental Resp Conc LPF 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1196
Jefferson County District Court No. 16DR234
Honorable Russell Klein, Judge

In re the Parental Responsibilities Concerning L.P.F., a Child,

and Concerning Renee Fisher,

Appellee,

and

Henry Lu,

Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Harris and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Renee Fisher, Pro Se

Thomas Law Group, P.C., Sergei B. Thomas, Denver, Colorado, for Appellant

¶ 1     In this post-permanent orders proceeding involving Henry Lu (father) and Renee Christine Fisher (mother), father appeals the district court's adoption of the magistrate's order modifying parenting time and decision-making. We reverse in part, affirm in part, and remand for further proceedings.

## I.     Background

¶ 2     In 2016, the district court entered permanent orders allocating parental responsibilities for the parties' child who was then almost two years old. The court implemented a 50/50 parenting time schedule and allocated the parties joint decision-making, except for the area of religion, which was allocated to mother.

¶ 3     In July 2024, father moved to modify parenting time and decision-making. Father proposed that he become the majority time parent during the school year and requested sole decision-making responsibility as to the child's education. In support, father cited ongoing disagreements between the parties concerning the child's school enrollment and attendance. Father also sought clarification about the child's extracurricular activities, which he alleged had similarly been a source of friction.

¶ 4    After a hearing on the motion, the magistrate maintained a 50/50 parenting time allocation but implemented a week-on, week-off parenting time schedule.  The magistrate awarded father sole decision-making responsibility as to the child's education, but also ordered that starting in sixth grade, the child must attend school in Jefferson County at a school of father's choice, subject to certain distance requirements between the parties' two homes.  Based on a finding that "joint decision-making is endangering the child," the magistrate allocated all other decision-making responsibility to mother.

¶ 5    The magistrate also modified the parties' communication protocols and ordered the child to be re-enrolled in gymnastics and attend therapy.

¶ 6    After father petitioned for review, the district court adopted the magistrate's order.

## II.    Appellate Review of District Court Orders

¶ 7    Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review.  *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22.  We must accept the magistrate's factual findings unless they are clearly erroneous.  *In*

2

*re Marriage of Young*, 2021 COA 96, ¶ 8. However, we review questions of law de novo. *Sheehan*, ¶ 22.

### III. Incorrect Legal Standard when Modifying Decision-Making

¶ 8 We first consider father's argument that the magistrate erred by applying the wrong legal standard when modifying decision-making. Because the magistrate's findings and conclusions are insufficient to show that the court applied the correct legal standard to its decision modifying decision-making responsibility, we conclude that further proceedings are necessary.

### A. Applicable Law

¶ 9 The district court may modify a decree allocating decision-making responsibility when the circumstances have changed and the modification is necessary to serve the best interests of the child. § 14-10-131(2), C.R.S. 2025. But the court must retain the existing allocation unless, as relevant here, (1) the existing allocation "endanger[s] the child's physical health or significantly impairs the child's emotional development," and (2) "the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." § 14-10-131(2)(a), (c); *In re Marriage of Humphries*, 2024 COA 92M, ¶ 20.

¶ 10 The applicable statutes "generally establish a three-step analytical process" in which (1) there is a presumption that prior orders should remain in effect; (2) to overcome that presumption, the court must find that there is evidence showing that the status quo endangers the child and that a modification of the prior order will create advantages that outweigh any harm caused by the proposed modification; and (3) the court must determine whether the proposed modification is in the child's best interests. *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 21. Thus, a district court cannot modify decision-making responsibility based solely on the best interests of the child, and the inquiry is "more stringent than the best interests of the child standard." *Humphries*, ¶ 20.

¶ 11 The allocation of parental responsibilities lies within the sound discretion of the district court. *In re Marriage of Crouch*, 2021 COA 3, ¶ 21. But the district court must make findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order. *See* C.R.C.P. 52; *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9. And we review de novo

whether the district court applied the correct legal standard in making its determination. *Crouch*, ¶ 21.

## B. Analysis

¶ 12 The magistrate denied father's request to modify parenting time "based on the endangerment standard." With respect to decision making, it outlined the parties' long standing communication difficulties. The court then found "that the retention of decision making as currently allocated will significantly impair the child's emotional development and the harm caused by the change is outweighed by the benefits to the child of eliminating this level of conflict." Based on its finding that "joint decision making is endangering to the child, as [the] parents [cannot] agree on anything," the magistrate allocated educational decision-making to father and all other decision-making to mother.

¶ 13 We agree with father that the magistrate did not make sufficient findings under section 14-10-131(2)(c) when modifying decision-making. The endangerment standard requires evidence that keeping the current decision-making order "would endanger the child's physical health or significantly impair[] the child's emotional development and the harm likely to be caused by a

5

change of environment is outweighed by the advantage of a change to the child." § 14-10-131(2)(c). The standard is intended to be a high one. *See Humphries*, ¶ 20.

¶ 14     Though the magistrate generically stated that the current orders "will" damage the child's emotional development, suggesting some future impact, the magistrate did not identify any evidence showing that the child had experienced any emotional distress or other negative effects from the parties' communication difficulties. On the contrary, despite these difficulties, in the portion of the order addressing parenting time, the magistrate found that the child was "well adjusted" and "comfortable" in each party's home and community. And the magistrate did not make specific findings as to how the parties' communication challenges had significantly impaired the child's emotional development. *See, e.g., In re Marriage of Schlundt*, 2021 COA 58, ¶¶ 40-46 (concluding that district court's endangerment findings were insufficient because the court did not explain how the mother's challenged beliefs and demeanor significantly impaired the child's emotional development); *B.R.D.*, ¶¶ 19-21.

¶ 15     Likewise, the magistrate did not explain, in more than a conclusory fashion, how the benefits of modification outweighed any harms that it may cause. *B.R.D.*, ¶ 21. And lastly, the magistrate did not make any findings as to why the ordered decision-making modification was in the child's best interests. *Id.* Put simply, while the magistrate's findings show less than ideal parenting and persistent parental communication difficulties, the magistrate did not make findings of fact sufficiently explicit to give us a clear understanding of the basis of the order modifying decision-making under section 14-10-131. *See Gibbs*, ¶ 9. We therefore reverse those portions of the order modifying decision-making and remand the case to the district court for further proceedings. This includes the portions of the magistrate's order concerning father's selection of a school for the child starting in sixth grade, which we will address further below.

¶ 16     To the extent father suggests we should maintain the portion of the modification order that allocates educational decision-making responsibility to him, he directs us to no authority supporting that position. And in any event, because the magistrate's findings are insufficient to modify decision-making, the modification cannot

stand. *See* C.A.R. 1(d) (allowing the appellate court, "in its discretion, [to] notice any error appearing of record").

¶ 17     Because it has been over a year since the order on appeal entered, the district court shall consider the parties' and child's circumstances at the time of the remand proceedings and conduct a hearing to allow the parties to present new evidence of such circumstances. *See In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 27. Pending the remand proceedings and the entry of a new order, which shall occur forthwith, *see* § 14-10-128(1), C.R.S. 2025, the magistrate's December 31, 2024 order shall remain in effect. *Schlundt*, ¶ 56.

### C.     Other Issues on Remand

¶ 18     Because the issue may arise on remand, we also consider and reject father's contention that the magistrate erred by placing limits on the child's school enrollment starting in sixth grade.

¶ 19     As noted above, we do not view the portion of the magistrate's order requiring father to select a school in Jefferson County for sixth grade onward as separate from the portion of the order awarding father sole educational decision-making responsibility. And father has not cited any legal authority suggesting that an

8

allocation of decision-making responsibility must be unconditional. We view the school selection requirement as a limit on the allocation of educational decision-making responsibility to father, which may be permissible if the court makes supported findings that such a limit is in the child's best interests.

¶ 20　We also disagree that the placement of such a condition on father's educational decision-making responsibility runs afoul of father's fundamental right to make decisions concerning the care, custody, and control of his child. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 69-70 (2000). Where, as here, the court must determine the child's best interests in a dispute between two fit parents, such considerations do not apply. *See In re Marriage of DePalma*, 176 P.3d 829, 832 (Colo. App. 2007); *see also In re Marriage of O'Connor*, 2023 COA 35, ¶¶ 21, 37 (recognizing that the presumption that a parent's decision is in the child's best interests "only applies to disputes between a parent and a nonparent").

¶ 21　Lastly, because the district court must now reconsider and hold further proceedings on the modification of decision-making, we decline to address father's additional contentions that the magistrate's order violated his due process rights as to both the

allocation of medical decision-making to mother and the conditions placed on his educational decision-making.

## IV.     Scope of Proceeding and Due Process Issues

¶ 22     Although we reverse those portions of the magistrate's order modifying decision-making, we decline to disturb the various other portions of the magistrate's order challenged by father.  Specifically, father asserts that the magistrate violated his due process rights and otherwise abused her discretion by ruling on matters that were outside the scope of his motion to modify parenting time and decision-making.  We are not persuaded.

¶ 23     While father asks us to "reverse the [m]agistrate's orders on all issues not properly raised" in his motion, we must limit our review to the portions of the magistrate's ruling that were specifically challenged by father in his petition for review.  *See People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006).  Therefore, we only review father's contentions as it pertains to those portions of the magistrate's order addressing:

- the child's participation in gymnastics;
- the child's enrollment in therapy; and
- the parties' communication protocols.

## A. Legal Principles

¶ 24 Due process requires that a party be provided with notice reasonably calculated to apprise the party of the pending action and afford them an opportunity to present their objections. *See In re C.L.S.*, 252 P.3d 556, 559 (Colo. App. 2011).

¶ 25 In line with this concept, C.R.C.P. 7(b)(1) directs a party seeking a court order to file a motion, stating with particularity the grounds for the request and the relief sought. *See also* C.R.C.P. 121 § 1-15(d) (prohibiting a motion from being included in a responsive pleading). And when a party seeks to modify a court's allocation of parental responsibilities, the party must submit an affidavit setting forth facts to support the requested modification. § 14-10-132, C.R.S. 2025.

¶ 26 Yet, despite these procedural requirements, the essence of due process is fundamental fairness. *Van Sickle v. Boyes*, 797 P.2d 1267, 1273 (Colo. 1990). Therefore, due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *accord Van Sickle*, 797 P.2d at 1273.

¶ 27　　We review de novo whether a party was accorded sufficient due process. *See People in Interest of R.J.B.*, 2021 COA 4, ¶ 26.

### B.　Enrollment in Gymnastics

¶ 28　　We first reject father's assertion that the portion of the magistrate's order requiring the child to be enrolled in gymnastics violated his due process rights. Father's motion sought "clarification related to Extra-Curricular Activities," and mother's response discussed father having unenrolled the child from gymnastics because he was angry at mother. At the hearing, mother testified in detail about the parties' disagreement concerning the child's enrollment in gymnastics and each parent's right to attend the child's gymnastics practices. Therefore, because father specifically sought clarity on extracurricular activities, mother specifically testified about conflicts surrounding the extracurricular activity of gymnastics, and father had the opportunity to cross-examine mother, we cannot say that the magistrate violated father's due process rights by addressing gymnastics.

## C.    Therapy

¶ 29    We likewise decline to disturb the portions of the magistrate's order requiring the parties to enroll the child in therapy. While therapy was not discussed in father's motion, mother requested that the child attend therapy in her response, and at the hearing, she opined that the child should be in therapy. Father's attorney cross-examined mother on the topic of therapy, and in doing so, repeatedly indicated that father did not oppose the child's participation in therapy. Though father now objects, he fails to explain how he was prejudiced by an order that he did not oppose. We therefore decline to disturb the magistrate's ruling. *Cf. People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (an alleged error, without a valid allegation of prejudice, is not grounds for reversal).

## D.    Communications Protocols

¶ 30    We also disagree with father that the magistrate violated his due process rights by adjusting the parties' communication protocols, including eliminating the requirement that the parties provide each other with written updates after their parenting time.

13

¶ 31    Under section 14-10-129(1)(a)(I), C.R.S. 2025, a court "may . . . modify an order granting or denying parenting time rights whenever such . . . modification would serve the best interests of the child." And section 14-10-124(7)(d), C.R.S. 2025, allows a court, in implementing orders allocating parental responsibilities, to formulate procedures for parents to "communicat[e] with each other about the child, including methods for communicating and frequency of communication." Under our flexible inquiry into whether due process has been violated, *see Brewer*, 408 U.S. at 481, we do not view the magistrate's minor adjustments to the parties' communication procedures — that were incidental to the court's core parenting time and decision-making orders — as implicating due process.

## V.    Parenting Time

¶ 32    It is unclear to us, based on the arguments set forth in his opening brief, whether father also challenges the portions of the magistrate's order modifying parenting time. For instance, father asserts in multiple places that the magistrate improperly applied an endangerment standard to his proposed modification of parenting time, as opposed to the best interests of the child standard. But

14

regardless, we decline to disturb the magistrate's ruling concerning parenting time.  Although the magistrate denied father's proposed modification of parenting time under the endangerment standard, the magistrate alternatively explained in detail why father's proposed modification was not in the child's best interests.  Father has not challenged the magistrate's best interests findings on appeal, and we therefore decline to disturb that portion of the magistrate's order.

## VI.    Disposition

¶ 33     Those portions of the magistrate's order modifying decision-making are reversed.  Those portions of the magistrate's order concerning gymnastics, therapy, and parental communication protocols are affirmed.  The case is remanded to the district court for further proceedings consistent with this opinion.  The portions of the order not challenged on appeal remain undisturbed.

JUDGE HARRIS and JUDGE MOULTRIE concur.